## OLDS & WHIPPLE, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 20.

Circuit Court of Appeals, Second Circuit.

Feb. 4, 1935.

Benedict M. Holden, of Hartford, Conn., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The petitioner seeks a review of deficiencies in income taxes declared by the respondent for the years 1927, 1928, and 1929, pursuant to sections 1002, 1003 of the Revenue Act of 1926, c. 27, 44 Stat. 110 (26 US CA §§ 1225, 1226), and section 1001 (a), as amended by section 1101 (a) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 286 (26 USCA § 1224). The petitioner is a Connecticut corporation, incorporated in 1921 succeeding to the partnership of Frank H. Whipple and Alfred A. Olds, which dealt in farm supplies and fertilizers. Common stock of the corporation consisted of 9,000 shares, of which Frank H. Whipple owned 4,500 shares and Alfred A. Olds 4,400 shares; 100 shares being owned by a son of the latter. Alfred A. Olds died September 16, 1925, and his 4,400 shares were held by his estate on July 26, 1926. W. S. Pinney & Co., a Connecticut corporation, was engaged in the business of operating a farm for the growing, packing, and selling of shade-grown tobacco. It was incorporated January 27, 1920. Prior to its incorporation, it was a joint venture; Whipple and Olds each owning a quarter interest thereof, and W. S. Pinney a half interest. When incorporated, there was an indebtedness to Whipple & Olds (then a partnership) of $110,500, and a personal indebtedness of W. S. Pinney of $29,000. The capital stock of Pinney & Co. consisted of $110,500 preferred nonvoting stock, and 12 shares of common stock of the par value of $100 a share. Olds and Whipple, as partners, accepted $110,500 in preferred stock in exchange for their account receivable, canceling that account. The common stock was divided, 3 shares each, among Frank H. Whipple, Alfred A. Olds, W. S. Pinney, and F. B. Pease; the latter being the son-in-law of Olds. When Olds & Whipple was incorporated, the partners transferred to the new corporation, in exchange for its stock, the preferred stock of the Pinney Company, but kept the common stock. In December, 1922, the capital stock of the Pinney Company was increased to $295,700, consisting of $160,000 first preferred stock and $110,500 second preferred stock and $25,500 common stock. A later indebtedness to Olds & Whipple, Inc., of $100,000 was canceled in exchange for $100,000 of first preferred stock. The increase in common stock was issued to the common stockholders as a stock dividend, and each of the common stockholders then owned 63 shares of the common stock. July 29, 1926, W. S. Pinney transferred his 63 shares of common stock to Olds & Whipple, Inc., and between February, 1926, and July, 1926, Pease assigned his 63 shares to Olds & Whipple, Inc. On July 29, 1926, the ownership of the outstanding shares of common stock of the Pinney Company was divided as follows: Olds & Whipple, Inc., 126 shares; estate of Alfred A. Olds, 63 shares; and Frank H. Whipple, 63 shares. On December 20, 1926, Frank H. Whipple transferred his 63 shares to Olds & Whipple, Inc. On December 20, 1926, the estate of Alfred A. Olds distributed its 63 shares of the common stock of the Pinney Company among the next of kin; the shares so distributed being transferred to Olds & Whipple, Inc., by the respective distributees on December 30, 1926.

The Pinney Company's operation in 1925 resulted in a loss of $238,009. On December 31, 1925, there was a deficit of $212,524.73. During the year 1926 the liabilities were in excess of its assets. In 1926 it had an operating deficit of $151,772.46. It operated unsuccessfully during the year, and in the spring of 1926 liquidation was discussed, but not acted upon because it was thought it would affect the good will and credit of Olds & Whipple, Inc. In 1927, the Pinney Company continued its operations in the warehouse business, but did not plant a crop. It increased its investment—land, by over $2,000; buildings, by over $16,000; and machinery, by over $5,000. It also increased its investment in buildings and machinery during the early part of 1928. In 1927 it leased its land to another company and made an operating profit of $33,120.87; in 1928, an operating profit of $6,048.32; and $6,243.22 in 1929. In the latter part of 1928 it was decided to dissolve the company by statutory action, and, after a vote of the board of directors, dissolution was consummated in 1929.

Olds & Whipple, Inc., and Pinney Company filed separate income tax returns for 1925. Olds & Whipple, Inc., filed a consolidated income tax return on behalf of both corporations, claiming affiliation for the year 1926. In this latter return it claimed affiliation during 1925 and 1926, and a net operating loss due to such affiliation of

$170,384.93. In the 1926 return, it also claimed a right to offset against 1926 operating income profit of $119,802 the Pinney Company's operating loss of $151,772.46. The respondent denied the affiliation. He determined that the stock of the Pinney Company became worthless in 1926 and to the extent of the income of Olds & Whipple, Inc., for 1926, amounting to $119,802, allowed the loss of the investment in such stock to be deducted. There was no tax for 1926. A consolidated return in 1927, filed by Olds & Whipple, Inc., was based on the affiliation with the Pinney Company. In it Olds & Whipple, Inc., claimed as an offset against consolidated income a net operating loss shown in the return of 1926 amounting to $170,384.93. The return showed a net loss for 1927 of $14,491.68. Affiliation was allowed, and the balance of the stock loss of $210,500 was applied against the income, amounting to $122,772.38. The respondent allowed the operating loss of the Pinney Company for 1926 to be applied against its 1927 income to the full amount thereof.

In the consolidated return for 1928, Olds & Whipple, Inc., claimed affiliation with the right to deduct the full amount of the loss of its investment in the preferred stock of the Pinney Company of $210,500. Respondent allowed the affiliation for 1928 and allowed the carrying forward of the nonabsorbed net loss of the Pinney Company during the year 1926, and applied this amount against that company's income for 1928. He disallowed the stock loss claimed because he held it to be worthless in 1926, in which year he did allow a loss. In the consolidated return for 1929, Olds & Whipple, Inc., claimed affiliation for the taxable year and the right to carry forward a net loss of $100,372.15 which in part represented the nonabsorbed balance of stock loss claimed in 1928. This was disallowed.

It thus appears that in 1926, Frank H. Whipple and the estate of Olds, together, owned 97.77 per cent. of the voting stock of Olds & Whipple, Inc. They also owned 50 per cent. of the voting stock of W. S. Pinney Company; the remaining 50 per cent. being owned by Olds & Whipple, Inc.

Section 240 (d) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 46 (26 USCA § 993 (d), provides that "two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the stock of the other or others, or (2) if at least 95 per centum of the stock of two or more corporations is owned by the same interests. * * *"

Therefore, if it may be said here that 95 per cent. of the stock of the two corporations was owned, in 1926, by the same interests, the two corporations were affiliated for the purpose of filing consolidated tax returns.

In New Colonial Ice Co. v. Helvering, 292 U. S. 435, 54 S. Ct. 788, 791, 78 L. Ed. 1348, the court said: "As a general rule a corporation and its stockholders are deemed separate entities and this is true in respect of tax problems."

But a separation of the entities may be disregarded in exceptional instances where it is necessary in order that public or private rights may be duly protected or enforced. There the petitioner was seeking a deduction from its net income of the losses sustained by the corporation to whose assets and business the petitioner was a successor. Deductions, like exemptions, are privileges, and one claiming a deduction must show that he comes within the terms of the statute granting the privilege. In Handy & Harman v. Burnet, 284 U. S. 136, 52 S. Ct. 51, 52, 76 L. Ed. 207, the court regarded the test as one of ownership rather than control, where affiliation under a statute was claimed. It was said that "The purpose of section 240 was, by means of consolidated returns, to require taxes to be levied according to the true net income and invested capital resulting from and employed in a single business enterprise even though it was conducted by means of more than one corporation."

The statute intended "to secure substantial equality as between shareholders who ultimately bear the burden. That intention is shown by the legislative history and was given effect by the regulations contemporaneously promulgated."

In the instant case, it is clear that there were not two capital investments, but one capital investment distributed between two corporations. From this consolidated capital investment there came but one consolidated income. To so hold would be in keeping with the intention of Congress to permit a consolidated tax return to be made for a consolidated income. This would be consistent with the purposes of the statute, as construed by the Supreme Court, in producing substantial equality as between shareholders who must ultimately bear the burden. The

ultimate burden here would be borne by Frank H. Whipple and the estate of Alfred A. Olds. They share in the profits or losses of the corporations; ultimately they pay the taxes. The Handy & Harman Case does not require ownership by the same interests, but that "the same interests are (be) the beneficial owners." Thus the court there directed itself more to control than ownership, and the holding was that "control of stock without title, beneficial ownership or legal means to enforce it" was not enough. It is evident in the instant case that Frank H. Whipple and the Olds estate had actual ownership of the necessary percentage of Olds & Whipple, Inc., and "beneficial ownership" of the stock of the Pinney Company together with the "legal means to enforce" all control over the latter corporation.

In Palgrove Co. v. Commissioner, 63 F. (2d) 810 (C. C. A. 2), the evidence showed one stockholder owned 98 per cent. of petitioner and 25 per cent. of an affiliate, and that the other three shareholders in the affiliate each owned 25 per cent., and that, while they were members of the same family as the owner of the 98 per cent. of the petitioner, they owned no stock in the petitioner. There we held that they were not affiliated corporations. We said: "The statute sets a grosser, more legalistic, test, and the conditions were not fulfilled." That case is distinguishable from the instant case. In Crossett Western Co. v. Commissioner, 73 F. (2d) 307, 308 (C. C. A. 3), two corporations operated as a unit. Three families owned 95 per cent. of the stock of petitioner, and the petitioner and some, but not all, of its stockholders owned over 95 per cent. of the stock of the other corporation. It was held they were not affiliated. The court based its ruling on the fact that 95 per cent. of the stock of each corporation was not owned in "substantially the same proportions" by the same interests, this because only some of the members of the three families owned stock in the other corporation. In the instant case, the ownership of each corporation was in the "same proportions." Indeed, what was said in that case, by implication at least, may be cited for permitting affiliation here. The court indicated that, if the stock of the other corporation which was not owned by the petitioner had been owned by all the members of the three families in the same proportions as their holdings in the petitioner, the court would have determined the existence of an affiliation. It indicated that the corporate fiction might be disregarded in determining whether the same interests owned the stock of the corporation. We think the two corporations were affiliated in 1926 and the years thereafter as claimed.

Moreover, the evidence here required a finding that the loss was sustained in the Pinney stock in 1928, and not in 1926 as ruled by the Commissioner. During the year 1926 and thereafter until dissolved, the Pinney Company carried on operations as already stated. In 1927–28 it made an operating profit and cut its deficit. It was not until late in 1928 that it was definitely decided to dissolve the company by statutory process. The stock did not become worthless until it was decided to liquidate, for it was then that it was definitely determined that there could be no recovery on the investment. Coalinga-Mohawk Oil Co. v. Com'r (C. C. A.) 64 F. (2d) 262; Dresser v. United States (Ct. Cl.) 55 F. (2d) 499. The fact that the assets were insufficient to meet the operating liabilities may properly be taken as evidence of worthlessness of stock, but it is not conclusive. Actual worthlessness should be the test, and, if those in charge of the operations of the corporation, acting in good faith, believed that they might work out of their business conditions wherein losses were sustained, and did so, realizing some profits and reducing the deficit, it may not be said that the stock was actually worthless. A real loss is sustained when all chances or possibilities of collection have been effectively destroyed. Deeds v. Commissioner (C. C. A.) 47 F. (2d) 695. In Burnet v. Imperial Elevator Co. (C. C. A.) 66 F. (2d) 643, the court held that a loss to the corporation of the cost of stock in a subsidiary company occurred for tax purposes, not when liquidation of the subsidiary was agreed upon, but when the subsidiary's assets were sold and found insufficient to satisfy creditors.

The petitioner should be allowed to deduct the resulting net loss for 1928 from the 1929 net income.

Order reversed.