## BROOKS v. UNITED STATES.
### No. 13.

District Court, M. D. Pennsylvania.
March 9, 1940.

H. R. Van Deusen, of Scranton, Pa., and Richard B. Barker and J. S. Y. Ivins, both of Washington, D. C., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Michael Gould, Sp. Assts to Atty. Gen., and Frederick V. Follmer, U. S. Atty., and Joseph P. Brennan, Asst. U. S. Atty., both of Scranton, Pa., for defendant.

JOHNSON, District Judge.

This is an action to recover an alleged overpayment of income tax for the tax year 1933. The case was tried without a jury. The jurisdiction of the Court, the parties to the suit and the amount in controversy are not in question.

From the stipulation of the parties and the evidence taken, the Court finds the following:

## I. Facts

1. The plaintiff is a citizen of the United States and of the State of Pennsylvania, with his residence in Scranton, Pennsylvania.

2. The plaintiff duly filed his Federal income tax return for the year 1933 on or about March 15, 1934, with the Collector of Internal Revenue at Scranton, Pennsylvania, and the income taxes shown to be due thereon were duly paid in equal quarterly installments during the year 1934 to said Collector.

3. Subsequently, an audit was made of plaintiff's 1933 Federal income tax return and an additional tax liability in the amount of $7,035.09, together with interest amounting to $703.51 was assessed against the plaintiff, and said two sums totaling $7,738.60, were paid by the plaintiff to the Collector of Internal Revenue at Scranton, Pennsylvania, on November 25, 1935.

4. Said additional tax aforementioned was determined by the Commissioner of Internal Revenue by disallowing as a deduction from gross income of plaintiff when computing his net income subject to tax, a loss claimed to have been sustained in 1933 by plaintiff on stock of the First National Bank of Carbondale, Pennsylvania, owned by him and which stock was acquired by him in a transaction entered into for profit in 1901 at a cost of $11,200.

5. It is agreed that Carl A. Weinschenk, if called as a witness would testify that he is employed by J. H. Brooks & Co., which is a brokerage concern engaged in the selling of stocks in Scranton, Pennsylvania, and that as such he is familiar with the books and records of said concern; that an examination of the books and records shows that on April 22, 1913, 5 shares of the common capital stock of the First National Bank of Carbondale were purchased by said firm from P. V. Mattes at a price of $450 per share; that on July 23, 1913, 5 shares of the common capital stock of the First National Bank of Carbondale were sold by said firm to A. H. Sahm, Carbondale, Pennsylvania, at a price of $455 per share; and that the records of J. H. Brooks & Co. do not show any further transactions in this stock during the year 1913, and it is stipulated that he has been called as a witness and testified as above.

6. Within two years from the payment of the additional tax, with interest thereon as set forth in paragraph 3 above, plaintiff duly filed a claim for refund of his 1933 Federal income taxes with the Collector of Internal Revenue at Scranton, Pennsylvania.

7. The Commissioner of Internal Revenue on May 6, 1938, rejected said claim for refund on a schedule bearing number 24050.

8. The Collector of Internal Revenue to whom plaintiff paid said additional taxes mentioned in paragraph 3 above is no longer in office.

9. The plaintiff is and always has been the sole owner of the claim herein referred to and has not assigned or transferred the whole or any part thereof or interest therein. He has at all times borne true allegiance to the Government of the United States and has not in any way aided, abetted or given encouragement to rebellion against said Government.

10. It is agreed that if plaintiff is entitled to a loss deduction on account of the worthlessness in 1933 of the stock of the First National Bank of Carbondale, the parties hereto will submit to the Court a computation of the amount of judgment to which plaintiff is entitled.

11. The plaintiff in 1901 purchased 35 shares of the common capital stock of the First National Bank of Carbondale, par value $100, owing the same until about July 20, 1933, when the certificate representing these shares was surrendered by the plaintiff and cancelled by the bank.

12. The First National Bank of Carbondale was closed by proclamation of the President of the United States during the bank holiday of March, 1933. At that time Mr. Robert A. Jadwin, President of the bank, was appointed conservator, and the bank operated on a restricted basis under Jadwin as conservator until the close of business on August 3, 1933. From August 4, 1933 the said bank has been operating on an unrestricted basis.

13. On or about April 5, 1933 an examination of the bank's condition was made by examiners of the Comptroller's Office of the Treasury Department of the United States, and in conjunction therewith the following balance sheet was taken from the books of the bank:

| Resources | | Liabilities | |
|---|---|---|---|
| Loans and discounts | $ 721,232.09 | Capital stock | $ 110,000.00 |
| Overdrafts | 121.32 | Surplus | 350,000.00 |
| Bonds, securities, etc. | 2,197,607.50 | Undivided Profits | 91,309.50 |
| Federal Reserve Bank Stock | 19,800.00 | Dep. Bk. House | 45,390.47 |
| Banking House | 536,148.87 | Res. for Dep. Bk. House | 14,173.24 |
| Other real estate | 36,437.64 | Res. Dep. Other real estate | 5,316.60 |
| Due from Fed. Res. Bk. | 141,345.81 | Certified Cks. | 25.00 |
| Due From Trust Cos., etc. | 19,726.68 | Checks outstanding | 2,578.78 |
| Cash | 111,614.75 | Div. unpaid | 75.00 |
| Cash items | 50.00 | Demand Dep. | 180,780.17 |
| Suspense account | 7.00 | Time Dep. | 2,986,285.97 |
| Segregated funds: | | Segregated | 7,602.72 |
| Bankers T. Co. | 5,038.79 | Other " | 147,071.80 |
| Fed. Res. Bk. Sp. | 179,254.13 | Segregated 3/4—4/5 | 105,887.53 |
| Fed. Res. Bk. Conserv. | 51,388.03 | Acceptances | 64,031.63 |
| Cash | 88,912.73 | Other Liabil. | 6.92 |
| Conservator's Exp. | 1,849.99 | | |
| Total | $4,110,535.33 | Total | $4,110,535.33 |

14. On or about May 26, 1933 Mr. Jadwin received a letter from the Deputy Comptroller of the Treasury Department, dated May 20, 1933, advising that the plan of reorganization submitted by the First National Bank of Carbondale, Pennsylvania, had been approved by the Comptroller. The letter contained the following:

"The plan provides for the following:

"1. The increase of capitalization in the amount of $300,000.00 by the issuance of 30,000 shares of preferred stock, par value $10.00, to be sold at a price of $20.00, principally to depositers. The stock is to bear a 6% rate of interest and is to be retireable at $20.00 per share.

"2. The present stockholders are going to make a contribution of $110,000.00 which is the amount that they would be liable for in the event the bank were to liquidate.

"The following eliminations will have to be made:

| | |
|---|---|
| Doubtful paper | $ 6,100.00 |
| Estimated Losses | 5,600.00 |
| Bond Depreciation | 754,600.00 |
| Dep. on Buildings | 110,000.00 |
| | $876,300.00" |

15. On June 6, 1933, the stockholders of the First National Bank of Carbondale, pursuant to notice duly given, held a meeting, and adopted the following resolution:

"Whereas, the First National Bank of Carbondale, Pa., failed to receive a license to reopen and resume unrestricted banking business after the bank holiday of March 1933, and on the 23rd day of March 1933, Robert A. Jadwin was appointed Conservator of said Bank to conserve the assets of the said Bank for the protection of the depositors and creditors of the same, and in the interest of the stockholders pending the reorganization of the said Bank according to the plan approved and directed by the Comptroller of the Currency:

"And whereas, According to the examination of the condition of the First National Bank of Carbondale, Pa., by the Examiner of the Comptroller of the Currency as of April 5, 1933, it appears that the capital and surplus of said Bank is impaired and the Comptroller has approved a plan of reorganization of said Bank and directed said plan to be adopted as follows:

"1. The present stockholders are to surrender their stock in the bank to be canceled on the books of the bank and new shares issued and sold to the stockholders at $100. per share.

"2. Present capital of bank to be increased from $110,000. to $410,000. by the issuance of $300,000. in 30,000 shares of

preferred stock, par value $10. per share, to be sold at $20. per share to depositors principally.

"Be it resolved, by the stockholders of the First National Bank of Carbondale, Pa., that the plan of reorganization of said Bank as proposed by the Board of Directors of the First National Bank of Carbondale, Pa., on the 27th day of May 1933, and as approved and directed by the Comptroller of the Currency of the United States, and as set forth in the preamble, be confirmed, approved, and adopted, and that agreeably to said plan the present stockholders shall surrender their stock in said bank to be canceled on the books of the bank, and authorize the issue of a like number of shares of common stock of the par value of $100. to be subscribed for and sold to the old stockholders at par for cash or its equivalent, and it is further resolved that the present capital stock of the First National Bank of Carbondale, Pa., be increased from $110,000. to $410,000. by the issuance of $300,000. in 30,000 shares of preferred stock, par value $10. per share to be sold at $20. per share."

16. At a subsequent meeting of the stockholders held on or about July 5, 1933, the par value of the new common stock mentioned in (15) above was reduced from $100 to $10 per share.

17. On or about July 20, 1933, plaintiff sent the said bank a check for $3,500 together with a signed form subscribing for 350 shares of the new common capital stock of said bank, par value $10, and on July 31, 1933, a certificate for said 350 shares of stock was issued to plaintiff by the bank.

18. Seven of the persons owning 159 shares of the old common capital stock (par $100) of the First National Bank of Carbondale at the time of its reorganization in 1933 did not join in the plan of reorganization and did not subscribe or pay for 1,590 shares of new common capital stock (par $10). Those 1,590 shares of new common capital stock were subscribed and paid for by various people who had not previously been common stockholders. These new common stockholders paid $10 a share for the new common stock, i. e., the same price that was paid by the plaintiff and other old common stockholders who did subscribe for new common stock.

19. The seven persons, old common stockholders, who did not join in the plan of reorganization nor subscribe for shares of new common stock, received nothing for their 159 shares of old common stock, and their 159 shares of old common stock are now worthless.

20. The 35 shares of old common capital stock of the First National Bank of Carbondale, par value $100, referred to in finding No. 11 above, became totally and permanently worthless in the tax year 1933.

From the foregoing findings of fact, the Court arrives at the following

## II. Conclusions of Law

1. Plaintiff was entitled to take a loss deduction from his gross income in computing his 1933 net taxable income, representing a loss sustained by him in that year on account of the worthlessness in that year of 35 shares of the common capital stock of the First National Bank of Carbondale, Pennsylvania.

2. The First National Bank of Carbondale, Pennsylvania, through its conservator Mr. Jadwin, did not follow out the original plan of reorganization mentioned in the letter of May 20, 1933, from the Deputy Comptroller of the Treasury Department, which contemplated a voluntary contribution by the then common stockholders in the sum of $110,000. Instead, a materially different plan of reorganization was effected, wherein new common stock was issued and sold on equal terms to old and new stockholders. This latter plan of reorganization received the approval and ratification of the Treasury Department when the First National Bank of Carbondale, Pennsylvania was given a license to do business on an unrestricted basis on and after August 4, 1933.

3. The surrender by plaintiff of his 35 shares of old common capital stock and the cancelation thereof by the bank, coupled with the issuance and sale of new common capital stock, together represented in 1933 a closed transaction in the old capital stock, and also an identifiable event or series of events whereby it could be ascertained that plaintiff's 35 shares of old common capital stock had become wholly and permanently worthless in the tax year 1933.

4. The Commissioner of Internal Revenue incorrectly determined the taxable

net income of the plaintiff for the year 1933.

5. The evidence is sufficient to overcome the presumption of the correctness of the Commissioner's determination that the deduction claimed by the plaintiff is not allowable in 1933.

6. The evidence and the law sustain a judgment in favor of plaintiff.

7. Plaintiff is entitled to a judgment with interest thereon according to law, the amount thereof to be submitted by stipulation of the parties, and in addition the plaintiff is entitled to the costs of this suit.

### III. Discussion

The question before the Court is whether the 35 shares of stock owned by the plaintiff in 1933 became worthless in that year so as to entitle plaintiff to a deduction for loss in that year in determining his net income subject to tax.

Section 23 (e) (2) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, provides that in computing net income there shall be allowed as deductions, in case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business.

The following parts of Treasury Regulations 77, promulgated under the Revenue Act of 1932, should also be noticed.

"Art. 171. Losses. * * * Losses must usually be evidenced by closed and completed transactions. * * *"

"Art. 174. Shrinkage in value of stocks. A person possessing stock of a corporation can not deduct from gross income any amount claimed as a loss merely on account of shrinkage in value of such stock through fluctuation of the market or otherwise. The loss allowable in such cases is that actually suffered when the stock is disposed of. * * *"

"Art. 67. Contributions to corporation by shareholders. Where a corporation requires additional funds for conducting its business and obtains such needed money through voluntary pro rata payments by its shareholders the amounts so received being credited to its surplus account or to a special capital account, such amounts will not be considered income, although there is no increase in the outstanding shares of stock of the corporation. The

payments in such circumstances are in the nature of voluntary assessments upon, and represent an additional price paid for, the shares of stock held by the individual shareholders, and will be treated as an addition to and as a part of the operating capital of the company. * * *".

Defendant's first answer to plaintiff's contention that he is entitled to a deduction for loss for 1933, is that plaintiff can not make such deduction because he can not point to an "identifiable event" in 1933 which shows the total and permanent worthlessness of the stock in question.

Partial losses are not allowable as deductions from gross income so long as the stock has a value and has not been disposed of: Dresser v. United States, Ct.Cl., 55 F.2d 499, 512; and the statute does not contemplate and the regulations (Art. 174) forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer: United States v. White Dental Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120; New York Life Insurance Co. v. Edwards, 271 U.S. 109, 116, 46 S.Ct. 436, 70 L.Ed. 859. Losses are "sustained" within the meaning of the taxing act when the events definitely occur which give rise thereto: Dresser v. United States, Ct.Cl., 55 F.2d 499, 512; Lewellyn, Collector, v. Electric Reduction Company, 275 U.S. 243, 48 S.Ct. 63, 72 L.Ed. 262; Lucas v. American Code Company, 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. The deduction is allowed in the year in which it may appear that the taxpayer has received from the property all that it is possible for him to receive: Dresser v United States, Ct.Cl., 55 F.2d 499, 512; Brown v. Commissioner of Internal Revenue, 6 Cir., 94 F.2d 101, 103; Olds & Whipple v. Commissioner of Internal Revenue, 2 Cir., 75 F.2d 272, 275; Deeds v. Commissioner of Internal Revenue, 6 Cir., 47 F.2d 695; Gowen v. Commissioner of Internal Revenue, 6 Cir., 65 F.2d 923.

In order that a loss arising from investment in the capital stock of a corporation may be regarded as sustained in any given year, it is ordinarily necessary either that there be a final disposition of the investment, as by sale or exchange, or that there be some "identifiable event" by which the loss is otherwise clearly evidenced: Gowen v. Commissioner of Internal Revenue, 6 Cir., 65 F.2d 923; How-

ard v. Commissioner of Internal Revenue, 6 Cir., 56 F.2d 781; Commissioner of Internal Revenue v. Cleveland Trinidad Paving Co., 6 Cir., 62 F.2d 85; Commissioner of Internal Revenue v. R. J. Darnell, Inc., 6 Cir., 60 F.2d 82. The event which identifies a loss by a collapse in the value of securities may be single, or may comprise a series of facts: Rosing v. Corwin, 2 Cir., 88 F.2d 415, 416; and whether losses are sustained in a given year is to be determined by a practical and not a legal test: Brown v. Commissioner of Internal Revenue, 6 Cir., 94 F.2d 101, 103; Lucas v. American Code Company, 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010.

In the present case the government contends that there is no identifiable event because there was no liquidation nor any intent to liquidate the bank in 1933, and further argues that a mere showing that the appraised value of assets was less than liabilities is not a sufficient identifiable event showing worthlessness in 1933.

█ █ Deducting the eliminations of $876,300 (required by the Comptroller) from the assets of the First National Bank of Carbondale as listed on the balance sheet of April 5, 1933, it is clear that the assets were insufficient to meet the liabilities there listed. While this insufficiency is not conclusive of worthlessness of capital stock, it may nevertheless be taken as proper evidence of such worthlessness: Olds & Whipple v. Commissioner of Internal Revenue, 2 Cir., 75 F.2d 272, 275. Even more convincing are the facts surrounding the issue and sale of the new common capital stock of the bank. That sale of new stock was made on equal terms to new and old stockholders. In other words, at the time of cancelation of the old common capital stock and the issuance of new, there was no longer any hope of recovery on the old common stock. That old common stock conferred no benefit or valuable privilege with respect to the reorganization of the bank, since the new common stock was offered to old shareholders on the same basis it was offered to outsiders, and the retention of the old shares would give no interest in the reorganized corporation. At that time it was then certain that the old common stock of the First National Bank of Carbondale was wholly and permanently worthless, had become so in 1933, and therefore the plaintiff was entitled to take a deduction

for loss in that year in computing his net income subject to tax. DeFord v. Commissioner of Internal Revenue, 19 B.T.A. 339.

█ Next the government contends that the plaintiff is not entitled to make the deduction because the surrender and acquisition of new stock plus the payment of money constituted one transaction, and amounted to a voluntary assessment and a contribution to capital. If this were true, naturally no deduction for loss could be made, under the Treasury regulations above quoted and the decisions thereunder. First National Bank of Wichita et al. v. Commissioner of Internal Revenue, 10 Cir., 46 F.2d 283, 284. And in the alternative the government argues that if the surrender of the old stock and the acquisition of the new are found to be distinct and separate events, then the surrender was merely the making of a gift to the corporation which does not give rise to a deductible loss.

It is true that the plan of reorganization as referred to in the letter from the Comptroller's office dated May 20, 1933, contemplated the making of a voluntary contribution of $110,000 by the old common stockholders, that being the amount they would be liable for in event of liquidation. However, that plan as spoken of by the Comptroller's office made no mention of any proposed new issue or reissue of common capital stock, and contemplated only the old stockholders contributing toward that $110,000. This Court has found as a fact that the conservator did not follow the plan of reorganization as originally proposed to the Comptroller, but instead effected a different plan, one reason probably being that it was discovered all the old common stockholders would not join in making the voluntary contribution required. The revised plan which was carried out differed materially from the original plan in providing for the issuance of new common stock, changing the par value thereof, and offering it on equal terms to old stockholders and to outsiders. This revised plan received the approval of the Comptroller when the First National Bank of Carbondale was finally given a license to do business on an unlimited basis. The various statements of the conservator to the effect that he carried out the plan as approved by the Comptroller, and the language of the various notices and circulars sent out, stating that the steps outlined

therein were in pursuance of a plan approved by the Comptroller, do not support a different conclusion. Those all represent what the conservator apparently thought he was doing, but the facts as developed show that in reality he did something else, carried out a different plan which later received the ratification and approval of the Comptroller.

If there were a substantial compliance with the original plan of reorganization referred to in the Comptroller's letter of May 20, 1933, this Court would rule that minor variations of details in the method of achieving that result would not render it any less the same plan: Minnesota Tea Co. v. Helvering, 302 U.S. 609, 613, 58 S.Ct. 393, 82 L.Ed. 474. However, as pointed out above, there were material and substantial alterations made here regarding the rights, duties and liabilities of the common capital shareholders, resulting in an essentially different plan. The mere fact that the plan as carried out brought the bank $110,000 (the amount called for by the original plan) from common shareholders is not enough to prove that the plan carried out was substantially the original plan.

In attempting an explanation of the issuance of new common stock, the government argues in its brief, page 21: "* * All the stock was cancelled in order that other stockholders might be secured to take the place of the seven stockholders who refused to contribute. If this were not done the stockholders would have to contribute not only the amount for which they would be liable but also sufficient to make up the amount for which the other seven stockholders would be liable."

This latter statement is incorrect, for the original stockholders could not be made to contribute in excess of their statutory liability in the event of liquidation, and surely the Comptroller never intended such further assessment or contribution.

The government's argument that if we treat the surrender and new purchase as two separate and distinct events, then necessarily the surrender was a gift to the corporation, is also erroneous. It is predicated upon the assumption that worthlessness as of the time of surrender was not proved, but this Court has found that worthlessness to have been established satisfactorily. Therefore, even if this theory were accepted the government's argument must fall.

In this action the burden is on the taxpayer to establish the fact of worthlessness by reasonably convincing evidence: Royal Packing Co. v. Commissioner of Internal Revenue, 9 Cir., 22 F.2d 536, 538. Plaintiff likewise has the burden of overcoming the presumption of correctness attaching to the Commissioner's determination: Old Mission Co. v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623. These burdens he has successfully met and sustained.

At the trial of this case defendant moved for a directed verdict after both sides had closed their cases: Transcript, Page 32. At that time the Court reserved decision on the motion. In view of the above opinion, the Court now refuses the motion of the defendant for directed verdict, and notes an exception for the defendant.

Therefore, it is ordered that judgment be entered for the plaintiff in the above action for a principal sum with legal interest, according to a stipulation of the parties to be filed in this Court within 30 days from the date of this order. It is also ordered that judgment be entered for plaintiff for the costs of this suit.