### CHAPIN v. HASSETT.

### THIRD NAT. BANK & TRUST CO. et al. v. SAME.

**Civil Actions Nos. 1778, 1787.**

District Court, D. Massachusetts.

Feb. 10, 1944.

C. Keefe Hurley, Edward J. Keelan, Jr., and Hale & Dorr, all of Boston, Mass., for plaintiffs.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Eugene E. Angevine, Sp. Assts. to Atty. Gen., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for defendant.

SWEENEY, District Judge.

These two actions, in which the taxpayers seek to recover income taxes allegedly improperly assessed and collected, have been consolidated for trial. In the main, they are based on the same facts and will be treated herein as one action, with an additional issue decided in the Chapin case.

The taxpayers were each owners of fifty per cent. of the stock in the Breckwood Real Estate Company (hereinafter referred to as Breckwood). Their stock investment amounted to $27,885.52 each. In addition each had loaned money to Breckwood; Chapin, in the amount of $28,017.48, and Fuller, in the amount of $28,645.88. In filing their tax returns for the year 1937 each claimed a bad debt deduction in the amount of his combined stock investment and advancements. The Commissioner first denied the deductions entirely, but, after protest by the taxpayers, allowed the deductions to the extent of approximately $2,500 in each case. The basis for the Commissioner's determination was that the losses claimed by the taxpayers, except insofar as allowed by him, had occurred prior to 1937, and were, therefore, not deductible during that year. It is on this point that the parties are in disagreement. The sole issue before this court is whether the deductions claimed by the taxpayers were proper deductions as bad debts during the year 1937.

The history of Breckwood is as follows: Up to 1923 Breckwood was owned by the Brightwood Associates. This latter concern was liquidated during 1923, and the stock in Breckwood was acquired by these two taxpayers in equal shares. The value of the stock as of the date of acquisition was determined by the Board of Tax Appeals in an appropriate proceeding on January 6, 1930, when the valuation of the entire stock was set at $55,771.03. See B.T.A. Docket No. 28509, 18 B.T.A. 1306. On this basis each had an investment of $27,885.52 in Breckwood. From time to time each taxpayer advanced money to Breckwood as set out in their claim for deductions. These advancements ranged from items as small as $15 each to items as large as $11,050 each. The last large advancement made by these taxpayers was on December 7, 1933, when each contributed $11,050 to the corporation, in order that it might make a mortgage payment to the mortgagee. The taxpayers were indorsers on the corporate mortgage note. During 1934 and 1935, Fuller made further small advancements, although Chapin did not. Between 1923 and 1937 each taxpayer withdrew from Breckwood $8,059.10. Their advancements to Breckwood during this period were about $28,000 in excess of the amount that they withdrew from Breckwood.

In November, 1937, Breckwood's last remaining building, the Baker Building in Springfield, was lost by foreclosure to the mortgagee. Breckwood had on hand a small amount of cash which it turned over to the mortgagee, and thereafter Breckwood did no further business. The taxpayers claim that the loss of the Baker Building, which was one of their largest buildings, was the identifiable event which was related to the worthlessness of their claims against Breckwood.

The individual taxpayers were successful business men in other lines. Each was engaged in the manufacturing business, and occupied positions of responsibility in civic and banking circles. They were not shoe-

string operators. When the 1929 depression occurred they felt it to a great extent, but, believing from past experiences that the depressed real estate would right itself within a few years, they continued to make large advances to Breckwood. In fact, it was after 1929, and between October, 1930, and December 30, 1933, that they each advanced more than $20,000 to Breckwood. These advancements were consistent with their belief in the recovery of real estate. The Commissioner's determination that the bad debt losses occurred in some year prior to 1937 seems to be predicated on a finding in his mind that, when the taxpayers made their advancements of $11,050 each on December 7, 1933, they, then and there, decided to make no further advances to the corporation. This is not borne out by the facts. I find as a fact that no further advancements were made by the taxpayers, because neither was in a position to make further advances. Each had lost considerable in the 1929 crash and was financially unable to make further advances to Breckwood.

■ While the burden is on the taxpayer to show the year in which a loss occurs, I am satisfied that in the minds of these taxpayers the situation was not hopeless until 1937, and, in the absence of an identifiable event prior to that time which would relate to the worthlessness of their investment, I find that the impossibility of recovering all or a part of their losses in Breckwood was not apparent to these taxpayers until 1937.

This seems to be the test laid down in Olds & Whipple, Inc., v. Commissioner, 2 Cir., 75 F.2d 272. The hope of a real estate recovery was not a mere speculative chance, nor was the possible gain to be made such a trifling thing as to bring the facts in this case within the confines of Young v. Commissioner, 2 Cir., 123 F.2d 597. The hope in this case was not hope for a chance gain, but for a return to normal values as they had been known to these taxpayers. It is perfectly apparent now that the return never came, but I doubt if any person, standing in these men's shoes, would have written off the losses in any year prior to 1937. It is easy to look back now, and say what a sane and reasonable conclusion should have been, but that is not determinative of the loss or when it occurred. The test is a practical and not a legal test. Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. Considering the type and the amount of the investments of these taxpayers, and the very trying period during which they held on to their property, I cannot say as a matter of law that they were unreasonable in not writing off their losses before 1937. Between 1933 and 1937 every Government agency was engaged in attempting to aid all markets, including the real estate market. Many Government pronouncements gave rise to the belief that, if prosperity were not around the corner, at least it was not too far away to be sighted. The loss occurred to these taxpayers, not only in their own minds, but in fact when the corporation which they owned lost its last piece of realty to the mortgagee. I cannot say that, as reasonable men in the light of the period in which they were passing, they should have seen this loss sooner.

I therefore find that the Commissioner's determination of the amount which should have been deducted as bad debts by these taxpayers was incorrect, and that the full amount of the losses as claimed in their returns should be allowed.

■ In the Chapin case there is one additional issue to be decided. In 1930 Chapin purchased a one-half interest in a second mortgage on property owned by the Dwightstate Company. The amount of his investment was $10,000. The Dwightstate Company was another real estate corporation owning and operating property in Springfield. In 1937 the Springfield Institution for Savings, which was the owner of a prior mortgage, foreclosed, and Dwightstate thereafter ceased doing business. It was adjudicated a bankrupt in this court on November 30, 1937. During the period between Chapin's acquisition of the interest in the second mortgage on Dwightstate and the bankruptcy of Dwightstate in 1937, Dwightstate was continuously negotiating to sell the property covered by this mortgage, and at one time nearly consummated a sale which would have put all of the parties in the clear. However, the sale did not go through, and, as previously pointed out, the property was lost, and bankruptcy occurred. I am satisfied that the taxpayer properly took his loss on this property in 1937, and the Commissioner's determination that the loss occurred in a prior year is not founded on fact.

From the foregoing, I conclude and rule that these two taxpayer plaintiffs were legally entitled to the deductions claimed

in their returns filed for the year 1937, and that the Commissioner has improperly disallowed certain of these deductions, and has assessed a tax with interest thereon. The plaintiffs are entitled to judgment in the amount of the over-assessments. If the parties cannot agree, however, on the exact amount of the judgments to be rendered to these plaintiffs, on application to this court a determination on both issues will be made.