MICHAEL W. DELK AND MARY M. DELK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROBERT W. DELK AND DOROTHY A. DELK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Delk v. Commissioner
Docket Nos. 20674-92, 11340-93
United States Tax Court
T.C. Memo 1995-265; 1995 Tax Ct. Memo LEXIS 269; 69 T.C.M. (CCH) 2908; June 15, 1995, Filed *269 Decision will be entered under Rule 155. Under a plan of reorganization of X Corp. pursuant to chapter 11 of the U.S. Bankruptcy Code, the old shares of common stock were canceled and new shares of common stock were allocated exclusively to, and purchased by, holders of the old shares. Held, the cancellation of the old shares does not, in and of itself, make such shares worthless under sec. 165(g), I.R.C., but is simply one element to be taken into account in determining such worthlessness. Held further, based upon all the facts and circumstances, the old shares did not become worthless because the X Corp. had a potential future value that inured to the benefit of the old shareholders by virtue of their exclusive participation in the chapter 11 plan of reorganization. For petitioners: James C. Griggs. For respondent: Gerald W. Douglas. TANNENWALD
TANNENWALD
OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in, and additions to, the Federal income taxes of petitioners in these consolidated cases: Additions to Tax Sec.
Sec.
Sec.
Petitioner Year
Deficiency
[1] 6653(a)(1) 6661
6662(b)(2)
Michael W. and
1988
$ 7,250.53
$ 363.00
$ 1,813.00
--  Mary M. Delk  1989
42,075.23
--  --  $ 8,415.00 Robert W. and
1988
16,732.90
--  4,183.00
--  Dorothy A. Delk  1989
72,896.00
--  --  $ 14,579.00
1990
8,705.50
--  --  1,741.00
*270 The sole remaining issue is whether petitioners are entitled to worthless stock deductions under section 165(g) for stock of Valley Oil Company, Inc. (Valley Oil), for the 1989 tax year. All of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by reference. Petitioners Michael W. and Mary M. Delk resided in Salem, Oregon, at the time their petition was filed. Petitioners Robert W. and Dorothy A. Delk also resided in Salem, Oregon, at the time their petition was filed. Unless specified otherwise, petitioners in the plural hereinafter refers to all petitioners. Robert W. Delk and Michael W. Delk are hereinafter sometimes referred to as "the Delks". On January 20, 1988, three creditors of Valley Oil filed an involuntary bankruptcy petition against Valley Oil, under *271 chapter 7 of the U.S. Bankruptcy Code, with the U.S. Bankruptcy Court for the District of Oregon. On March 24, 1988, an order for relief was entered changing the bankruptcy proceeding to one governed by chapter 11 of the U.S. Bankruptcy Code. On the date the bankruptcy petition was filed, Valley Oil's authorized capital stock consisted of 100,000 shares of no par voting common stock (old stock). There were 66,162 shares issued and outstanding, and 33,838 shares were treasury stock. The issued old stock was owned as follows: Shareholder Percent
Robert W. Delk
29.40
Michael W. Delk
13.72
Benjamin T. Delk
2.00
David G. Jewett
13.72
Edward J. Baldwin
13.72
Employee Pension Trust
27.44
Total
100.00
A liquidation analysis prepared by Valley Oil in conjunction with a hearing on the confirmation of the First Modified Plan of Reorganization shows that, as of May 18, 1989, after taking into account the total assets of Valley Oil and the claims of secured creditors, there was only $ 195,000 available to general unsecured creditors, whose claims equaled approximately $ 4.5 million. An estimated balance sheet of Valley Oil prepared as an exhibit to the Sixth Modification *272 to Stipulation and Order Authorizing Secured Financing shows that, as of July 31, 1989, liabilities exceeded assets by $ 3,673,744. Following negotiations between Valley Oil and its major creditors, Valley Oil solicited offers for the purchase of its assets. These efforts resulted in several offers, but after considering the terms of the offers, Valley Oil determined that creditors would receive a greater return if it continued operations. One of the major creditors of Valley Oil agreed with this determination and further agreed to extend accounts receivable and inventory financing to Valley Oil and to participate in the long-term operation of Valley Oil. On July 7, 1989, Valley Oil's Fifth Modified Plan of Reorganization was confirmed by the bankruptcy court. Under section 4.11 of the plan of reorganization, the old stock of Valley Oil was canceled, and new no par voting common stock (new stock) was issued to Robert W. Delk, Michael W. Delk, and the Employee Pension Trust in consideration of the transfer to Valley Oil of $ 27,000 cash and the net proceeds of various contracts, for a total payment of $ 267,844. The new stock was issued in the following percentages: Shareholder Percent
Robert W. Delk
42.55
Michael W. Delk
42.55
Employee Pension Trust
14.90
Total
100.00
*273 The prebankruptcy shareholders of Valley Oil who did not transfer new consideration to Valley Oil were no longer shareholders following the reorganization. An analysis of Valley Oil's financial position after taking into account the plan's disposition of the claims of nine classes of creditors but without taking into account the aforesaid payment of $ 267,844 for the new stock showed an excess of liabilities over assets of $ 199,000. The plan also provided that Robert W. Delk and Michael W. Delk would pay $ 75,000 and guarantee the payment of an additional $ 100,000 to the unsecured creditors, both amounts to be reduced by credits for recovery by Valley Oil in respect of fraud claims, against one Alexander Stein. The Delks were also released from their obligations to Valley Oil as shown on the balance sheet, which amounted to $ 123,000. The plan further provided that the unsecured creditors would receive the proceeds from the sale of certain property but not less than $ 150,000 plus the proceeds, if any, of recovery by Valley Oil in respect of the aforementioned fraud claims. The plan specified that Robert W. Delk and Michael W. Delk would serve as officers and directors of *274 Valley Oil at an annual salary of $ 60,000 each with "Anticipated increases of 3 to 6 percent, years two through five". Robert W. Delk has been an employee and shareholder of Valley Oil from September 1957 to the time of trial. Michael W. Delk has been an employee and shareholder of Valley Oil from March 1971 to the time of trial. At all pertinent times herein, Robert W. Delk was president and a director, and Michael W. Delk was vice president and a director, of Valley Oil. During the chapter 11 proceeding, and after the plan of reorganization was confirmed, Valley Oil continued to do business at the same place and under the same corporate name with the same business assets, such as real estate, business and office equipment, storage tanks, and refueling trucks. Before the filing of the bankruptcy petition, the business of Valley Oil consisted of four divisions: the aviation fuel division, the retail petroleum division, the wholesale/trading division, and the truck shop operation. By April 1989, the wholesale/trading division had been discontinued due to lack of working capital. Valley Oil continued the three remaining divisions. The aviation fuel division was the reorganized *275 company's most profitable division. During the 1980's, Valley Oil experienced its most rapid growth in its wholesale and trading activities, primarily in bulk wholesale gasoline/diesel purchases originating in Alaska. Valley Oil successfully performed the provisions of the Fifth Modified Plan of Reorganization and was a successfully reorganized debtor under chapter 11 of the Bankruptcy Code. Valley Oil's tax returns for the fiscal years ending August 31 of 1988, 1989, 1990, and 1991 reflected the following: Year
Gross Sales
Taxable Income
1988
$ 28,065,584
$ (1,067,897)
1989
15,263,707
[2] (1,337,400) 1990
19,696,053
577,770 1991
23,143,834
422,110 The issue before us is whether the cancellation of the old stock entitles *276 petitioners to deductions for worthlessness under section 165(g). The amounts of the deductions are not in dispute. Section 165(g) allows a deduction for any security that is a capital asset which becomes worthless during the taxable year. See Aagaard v. Commissioner, 56 T.C. 191, 209 (1971). Whether shares of stock have become worthless, and the taxable year in which such worthlessness occurred, are questions of fact on which petitioners bear the burden of proof. Rule 142; Boehm v. Commissioner, 326 U.S. 287, 294 (1945); see Finney v. Commissioner, 253 F.2d 639, 641-642 (9th Cir. 1958), affg. in part and revg. in part T.C. Memo. 1956-247. The taxpayer's beliefs regarding the value, or worthlessness, of the security are not sufficient to establish a loss although they are not to be ignored. Boehm v. Commissioner, supra at 292-293; Aagaard v. Commissioner, supra at 209. Shares of stock are worthless only when they cease to have liquidating value (the corporation has an excess of liabilities *277 over assets) and do not have a potential future value. Austin Co. v. Commissioner, 71 T.C. 955, 969-970 (1979) (citing the leading case of Morton v. Commissioner, 38 B.T.A. 1270, 1278-1279 (1938), affd. 112 F.2d 320 (7th Cir. 1940)). [3] Generally, worthlessness is shown by a relevant identifiable event which "clearly evidences destruction of both the potential and liquidating values of the stock." Austin Co. v. Commissioner, supra at 970. Petitioners have the burden of proving both elements of this two-prong test. Figgie Intl., Inc. v. Commissioner, 807 F.2d 59, 62 (6th Cir. 1986), affg. T.C. Memo. 1985-369; Steadman v. Commissioner, 50 T.C. 369, 377 (1968), *278 affd. 424 F.2d 1 (6th Cir. 1970); see also Jones v. Commissioner, 103 F.2d 681, 685 (9th Cir. 1939), affg. a Memorandum Opinion of this Court dated March 17, 1938. The fact that the case is fully stipulated does not lessen that burden. Borchers v. Commissioner, 95 T.C. 82, 90-91 (1990), affd. 943 F.2d 22 (8th Cir. 1991). Moreover, we are entitled to draw whatever inferences and conclusions we deem reasonable from the stipulated facts. Borchers v. Commissioner, 943 F.2d at 23. We deal first with the question of liquidating value. Respondent asserts that the evidence of record is insufficient to establish that Valley Oil had an excess of liabilities over assets at the time of the approval of the reorganization plan. She maintains that the liquidating values upon which the plan was based were, to a large degree, estimates unsupported by any appraisals or other probative evidence. While there may be some gaps in the record in respect of liquidating value, we are not prepared to reject the values which the bankruptcy court took into *279 account in the course of the proceedings culminating in the approval of the reorganization plan. [4] We think it significant that the creditors objecting to the plan, including respondent, at no time voiced any criticism of any of these values, their objection relating to elements of the plan in respect of the treatment of various classes of creditors and Valley Oil's shareholders. Under the circumstances, and in the absence of any specific evidence as to the incorrectness of any of those values, we think petitioners have made a prima facie case in respect of the first prong of the test of worthlessness. Cf. Metzger v. Commissioner, 21 B.T.A. 1271 (1931); see Rand v. Commissioner, 40 B.T.A. 233, 239 (1939), affd. 116 F.2d 929 (8th Cir. 1941). The fact that we are satisfied that petitioners have carried their burden of proof in respect of Valley Oil's liquidating value constitutes only half of our inquiry. It is to the second prong of the applicable test that we now turn our attention. *280 The determination whether the old stock had any potential future value turns upon an examination of the circumstances under which the plan of reorganization was created and implemented and, particularly, the significance of the cancellation of the old stock. Petitioners do not suggest that Valley Oil did not have a potential future value. Indeed, they would be hard put to adopt such an approach in light of the glowing representations made, in presenting the plan of reorganization to the bankruptcy court, with respect to the viability and anticipated profitability and growth of Valley Oil. This is especially true because the record clearly indicates that the Delks were the architects of the plan of reorganization, that they were to be the recipients of substantial compensation from the reorganized company, and that Valley Oil not only continued in business but achieved profitability the first year after the plan was confirmed. Petitioners assert that, under the plan, their ownership of the old stock conferred no present or future benefit upon them and that their participation in any future value of Valley Oil attached to the new stock that they acquired for fresh consideration. *281 Respondent argues that it was the status of the Delks as owners of the old stock which entitled them to get the new stock and that the new stock simply constituted a continuation of their investment in the old stock albeit augmented by the contribution of additional funds. Consequently, respondent maintains that the potential future value of Valley Oil to its stockholders attached to the old stock as well as the new stock, with the result that such stock cannot be considered worthless as a result of its cancellation. We conclude that respondent has the better argument. We think it significant that, as far as we can determine from the record before us, there was no difference in the rights attaching to the old and the new shares. Both were no par common stock. Under these circumstances, it appears that the cancellation of the old stock and the authorization and issuance of the new stock simply served as a mechanism for effectuating the elimination of Benjamin T. Delk, David G. Jewett, and Edward J. Baldwin as shareholders and the reduction in the number of shares owned by the Employee Pension Trust. This was a factor noted in Brooks v. United States, 32 F. Supp. 158, 165 (M.D. Pa. 1940), *282 a case relied upon by petitioners and involving the cancellation of old common stock of a national bank and its replacement by new common stock pursuant to a plan of reorganization approved by the Comptroller of the Currency. We recognize that, in that case, the District Court held that the cancellation of the old stock made it worthless even though the taxpayer continued as a shareholder by way of a cash purchase of the new stock. However, we find Brooks distinguishable on several grounds. In the first place, there is no indication that the taxpayer was an active participant in developing the plan of reorganization, as was the case with the Delks herein. In the second place, in contrast to the Delks whose specific stock ownership was fixed in the plan itself, the taxpayer in Brooks was simply a purchaser after the adoption of the reorganization plan, along with others who had not previously been shareholders, in what appears to have been a public offering of the new stock. Consequently, there was a clear separation between the cancellation of the old stock and the sale of the new. Indeed, this element tends to explain why the District Court gave no particular attention *283 to the potential future value, simply observing that "at the time of cancellation of the old common capital stock and the issuance of new, there was no longer any hope of recovery on the old common stock." Brooks v. United States, supra at 164. We find equally unpersuasive the other authorities relied upon by petitioners. DeFord v. Commissioner, 19 B.T.A. 339 (1930), involved shares of common stock that we found to have become worthless in the year preceding the year in which the reorganization of the company, the cancellation of those shares, and the issuance of new shares for fresh consideration, occurred. Thus, similar to Brooks, there was a separation of the event of worthlessness from the event of cancellation and additional investment. In making this point, we do not intend to imply that there can be no separation of the events where the worthlessness and cancellation occur in the same year. Whether such separation exists and its impact on worthlessness will depend upon the particular facts and circumstances. Beyond the existence of separateness is the fact that, as we pointed out in Estate of Grant v. Commissioner, 36 B.T.A. 1233, 1247 (1937), *284 no "special benefit or valuable privilege" was conferred upon the taxpayer in DeFord, an element which contrasts sharply with the position of the Delks, who orchestrated the reorganization plan and whose exclusive participation together with the Employee Pension Trust was an integral part of that plan. It was precisely on this basis that, in Coleman v. Commissioner, 31 B.T.A. 319 (1934), affd. 81 F.2d 455 (10th Cir. 1936), we distinguished DeFord and refused to find that stock became worthless where the holders of the stock were accorded the right to acquire and did acquire all of the stock issued in connection with a reorganization. Cf. United Gas Improvement Co. v. Commissioner, 47 B.T.A. 715, 726 (1942), affd. 142 F.2d 216 (3d Cir. 1944). In Stearns v. Kavanagh, 29 AFTR 1487, 41-2 USTC par. 9750 (E.D. Mich. 1941), also relied upon by petitioners, the taxpayer owned both preferred and common stock. In a restructuring of the corporation, via the creation of a new corporation, the taxpayer received common stock *285 in exchange for his preferred stock and nothing for his common stock. Under these circumstances, the District Court held that the taxpayer retained no interest in the new corporation by virtue of his ownership of the common shares of the old corporation. Here again, the existence of two distinct stockholdings (preferred and common shares) and the injection of a new corporation gave rise to a clear separation of the element of worthlessness of the common shares. In our opinion, the cancellation of the old stock and the issuance of the new stock comprised an unessential element of the plan of reorganization. If all of the shareholders of Valley Oil had been willing to remain as shareholders and to contribute their proportionate share of the $ 267,000 required under the plan, the cancellation of the old stock would have been unnecessary. Under these circumstances herein, we think it appropriate to disregard the cancellation and treat the situation as if the Delks had simply contributed the $ 267,000 necessary to cover what was a substantially reduced and relatively small deficit after the claims of creditors were dealt with (less than $ 200,000) and provide a small amount of working *286 capital. We recognize that the Delks' investment in the old stock disappeared from Valley Oil's balance sheet but we consider this factor equally irrelevant; as far as the Delks are concerned, that investment carried over and became part of their investment in the new stock. In sum, we do not read the decided cases as holding that cancellation of stock is the determining factor of worthlessness. In any event, irrespective of any contrary implication in some of those cases, we are of the view that, in determining the existence of potential future value, cancellation is only an element to be considered in light of the totality of the facts and circumstances. Once the cancellation of the old stock is rejected as the determining factor, the future potential value becomes an important consideration. We recognize that the Delks paid fresh consideration for the new common stock. We also recognize that the approval of that consideration by the bankruptcy court is an indication that it considered such consideration fair and reasonable. But it does not follow that such consideration should necessarily be equated with the value of the new stock and the consequent lack of value, or worthlessness, *287 of the old stock. This is particularly true because the record indicates that the consideration paid by the Delks represented all that their available assets permitted them to pay and that disapproval of the plan would have left Valley Oil with no alternative but to liquidate, in which event the creditors would have received less than they presumably would receive under the reorganization plan. Moreover, it is of some significance that the record is silent as to whether the failure of some of the old shareholders to participate in the acquisition of the new stock was due to lack of available assets or their view that Valley Oil had no potential future value. In view of the foregoing and having in mind the rosy prospects upon which the chapter 11 plan of reorganization was based, see supra p. 10, we conclude that petitioners have failed to carry their burden of proof that the Delks' old stock was worthless. Accordingly, they have not satisfied the second prong of the applicable test, see supra p. 9, and are not entitled to the claimed deductions. Cf. Figgie Intl., Inc. v. Commissioner, 807 F.2d 59 (6th Cir. 1986), affg. T.C. Memo. 1985-369; *288 Lincoln v. Commissioner, 24 T.C. 669, 696-697 (1955), affd. 242 F.2d 748 (6th Cir. 1957); Lawson v. Commissioner, 42 B.T.A. 1103 (1940); see also Rassieur v. Commissioner, 129 F.2d 820 (8th Cir. 1942), revg. a Memorandum Opinion of this Court dated May 29, 1941. Under the foregoing circumstances, we find it unnecessary to consider whether there was in effect a tax-free exchange of the old stock for the new Valley Oil stock in a reorganization within the meaning of sections 354 and 368 so as to disallow the claimed losses, particularly since, on brief, respondent has expressly renounced any claim that such was the case. To take into account the concessions of the parties, Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Included in the calculation of income was a net loss of $ 1,498,694 representing the excess of a fraud loss from alleged fraudulent transactions by one Alexander Stein. We note that, if this loss is eliminated, Valley Oil would have shown taxable income from operations.↩
3. See also Corona v. Commissioner, T.C. Memo. 1992-406, affd. 33 F.3d 1381↩ (11th Cir. 1994).
4. The claim against Alexander Stein seems not to have been of significant value, and, in any event, the value of that claim plus whatever going concern value may have attached to the assets of Valley Oil were unlikely to have exceeded the $ 3,673,744 deficit as of July 31, 1989. See supra↩ p. 4.