## DEEDS v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### KETTERING v. SAME.

### Nos. 5542–5544.

Circuit Court of Appeals, Sixth Circuit.
March 4, 1931.

MOORMAN, Circuit Judge, dissenting.

W. W. Spalding, of Washington, D. C. (Lee Warren James and R. K. Landis, both of Dayton, Ohio, and Mason, Spalding & McAtee, of Washington, D. C., on the brief), for petitioners.

Harvey R. Gamble, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch, C. M. Charest, and John MacC. Hudson, all of Washington, D. C., on the brief), for respondent.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The present petitions for review raise questions of the right of the petitioning taxpayers to deduct from their incomes, in making tax returns for the year 1921, losses claimed to have been sustained by them in the year 1921 from investments in the capital stock of the Smith Gas Engineering Company, and also debts owing to them by that company which, it is claimed, were determined to be worthless and were charged off during the tax year. The three cases were consolidated for purposes of the hearing.

The Smith Gas Engineering Company was organized by the petitioners in December of 1915, and began operating in January, 1916. Petitioners E. A. Deeds and Charles F. Kettering were the owners of the entire issue of 720 shares of preferred stock, and of 696 shares of an issue of 1,499 shares of common stock. In the earlier years the books of the company showed profits, but for the fiscal year ending in 1919 a loss of $12,-474.99 was suffered. In 1920 and 1921 the books showed losses of $167,378.93 and $178,196.31, respectively. During these years operations were continued only by borrowing large sums of money from the petitioners and from banks. In December, 1921, the company was indebted to banks in the sum of $195,000, and to the petitioners in the sum of $393,000. The financial statement of the company at the close of business November 30, 1921, showed assets slightly in excess of liabilities, exclusive of capital stock, but the company was insolvent in the commercial sense that it was wholly unable to meet its obligations as they matured in the ordinary course of business.

Payment of the notes held by petitioners was demanded on December 20, 1921, in response to which the company advised the petitioners that it was insolvent and unable to pay, and that any attempt on their part to enforce payment would drive the company into bankruptcy. It was suggested to the petitioners, however, that, if given time and a better financial statement as a basis for credit, the company might eventually be successful. On December 22d the petitioners advised the company that, for the purpose of enabling it to present an improved financial statement and continue its business, they would agree to surrender notes and cancel indebtedness to the amount of $293,970. The company accepted this offer by action of its board of directors, and thereafter, before December 31st, the notes were surrendered for cancellation and the indebtedness was charged off by petitioners on their books as worthless. The company continued to operate until February 28, 1927, when it was liquidated, but the books showed annual losses varying from $15,238.01 to $94,107.74.

In their income tax returns for the calendar year 1921, petitioners claimed the right to deduct the amount of the indebtedness thus alleged to have been ascertained to be worthless and charged off. This led to a deficiency assessment, and it was later claimed before the Board of Tax Appeals, and is now claimed in the petitions for review, that the petitioners are not only entitled to the deductions taken, as debts ascertained to be worthless and charged off within the taxable year under section 214(a)(7), but that petitioners E. A. Deeds and Charles F. Kettering are each entitled to a further deduction of $77,300, being the amount invested by them in the capital stock of the Smith Gas Engineering Company, under section 214(a)(5) as losses sustained during the taxable year and not compensated for by insurance or otherwise.

1. Counsel for petitioners E. A. Deeds and Charles F. Kettering seem to have substantially abandoned the claim for loss arising from the stock ownership. Indeed, such abandonment is in accord with established principles controlling the allowance of deductions under this section, and petitioners' claim to such allowance could not well be upheld. Section 214(a)(5) of the Internal Revenue Act of 1921 (chapter 136, 42 Stat. 227, 239) permits only deductions of "losses sustained during the taxable year." This has repeatedly been held to justify deduction only when the loss is evidenced by a closed transaction. New York Ins. Co. v. Edwards, 271 U. S. 109, 116, 46 S. Ct. 436, 70 L. Ed. 859; United States v. White Dental Co., 274 U. S. 398, 47 S. Ct. 598, 71 L. Ed. 1120; Brewer, Collector, v. Orr, 19 F.(2d) 230 (C. C. A. 6); Seiberling v. Commissioner, 38 F. (2d) 810 (C. C. A. 6); Mastin v. Commissioner, 28 F.(2d) 748 (C. C. A. 8). Petitioners retained their ownership of the shares of capital stock. The discharge of indebtedness in the amount of $293,970 had operated to give the stock a book value substantially equal to its par value. The company's credit position was greatly improved. Not being a "debt," the stock could not be "ascertained to be worthless and charged off," in whole or in part, under section 214(a)(7). There still remained the hope, and possibly the expectation, that the affairs of the corporation could be made to prosper. In no sense could the

transaction be considered as closed while operations thus actively continued. It was not a case, such as Royal Packing Co. v. Commissioner, 22 F.(2d) 536 (C. C. A. 9), or De Loss v. Commissioner, 28 F.(2d) 803 (C. C. A. 2), where, although the stock was still held, the value had "become finally extinct." Upon this issue the finding of the Board is affirmed.

■ 2. We come then to a consideration of whether petitioners are entitled to a deduction by reason of the release and discharge, otherwise than by payment, of the $293,970 of indebtedness. It is claimed by the petitioners that, if not deductible in whole, as "debts ascertained to be worthless and charged off within the taxable year," yet the Commissioner should have allowed a substantial deduction, under the provision permitting such action as to debts "recoverable only in part." We do not deem it necessary to determine this still doubtful question. For the purposes of this opinion, we assume that the debts were deductible in whole, and to the full extent to which they were charged off, or that no portion was deductible. Our thought is that, if not deductible in whole because of the release and cancellation, then no definite or separate part less than the whole can be said to have been ascertained to be worthless as of December 31, 1921, or at an earlier date, when the company's assets had a book value approximately equal to the total indebtedness, when it was impossible to say what the value in liquidation would have been, and when there had been no definite termination of the "chance" of success and payment in full, such as by the appointment of a liquidating receiver, bankruptcy, or the like. Compare Stranahan v. Commissioner, 42 F.(2d) 729 (C. C. A. 6); Sherman & Bryan v. Blair, 35 F.(2d) 713 (C. C. A. 2); Minnehaha National Bank v. Commissioner, 28 F.(2d) 763 (C. C. A. 8). But in approaching the question of deductibility in whole, it must be remembered that December 31, 1921, is the critical date for the ascertainment of worthlessness, and that this date was subsequent to the release and discharge of the indebtedness in question. We are not considering whether all the indebtedness was "recoverable only in part" by reason of the financial condition of the company; but whether, as of December 31, 1921, the taxpayer was entitled to a deduction on account of those particular debts which were charged off as worthless after they had been canceled and the notes surrendered.

It seems to us clear that after cancellation there could be no doubt of the uncollectibility and resulting worthlessness of the $293,970 actually charged off. All chance or possibility of collection had been effectively destroyed. A real loss "had been sustained." In such cancellation we have the occurrence of that event which prevents the collection of the debt, under the doctrine of United States v. White Dental Co., 274 U. S. 398, 401, 47 S. Ct. 598, 71 L. Ed. 1120, and the sole remaining question in the case is simply whether the taxpayer may claim the right to deduction under this section when such identifiable event, which prevents collection and makes the debt worthless, is his own voluntary surrender and discharge, cancellation or release, of the indebtedness.

The proper answer to this question depends, we think, upon the purpose and reasonableness of the action taken. It cannot be used as a subterfuge, merely to avoid the payment of taxes nor as a means of benefaction or bounty; but, if the step be taken in the interest of the taxpayer, in the exercise of an experienced business judgment, and in an effort to avoid even greater and otherwise certain losses, we cannot see that the taxpayer should be precluded from taking the deduction, because the amount of the loss then to be suffered was thus definitely ascertained, and the fact of such partial loss made certain by the action of the taxpayer himself. The facts are none the less clear that, after cancellation, the debts were in fact worthless, were realized to be so by the taxpayer, and were charged off on his books.

Applying these principles to the instant case, we think that the petitioners have brought themselves within the provisions of section 214(a)(7). The business of the company was that of manufacturing and selling machines for the production of gas for domestic use, principally in rural sections. It is in evidence that the company was not well organized, and, owing to the extension and use of electricity and oil burners throughout the country, it was the opinion of petitioner E. A. Deeds, in 1921, that the company had no future. Insolvency, in the commercial sense, is admitted, and it is also highly probable that the company was insolvent in 1921 even under the Bankruptcy Act (11 USCA), viz. that its entire assets taken at a reasonable valuation were insufficient to satisfy its debts. Petitioners had already advanced $393,000 in the shape of loans, and had indorsed notes discounted with banks in the further amount of $195,000. Losses in operation were being suffered at a rate in excess of $150,000 per year. Under these circumstances it would indeed require a high degree

of optimism to reach the conclusion that the affairs of the company could ever be made so successful as to avoid any ultimate serious loss to the petitioners. The crisis demanded that exercise of sound business judgment which would result in making such loss as small as possible. In addition to money loaned and contingent liability as indorsers, petitioners E. A. Deeds and Charles F. Kettering had each invested $77,300 in the capital stock of the company. From a review of this situation, the petitioners reached the reasonable conclusion, as it seems to us, that losses were inevitable, that they had already "been sustained," but that they might be minimized by the present release of $293,970 of the total of $393,000 due them. By so doing it seemed possible that further loss might be avoided upon the remaining $99,030 of indebtedness of the company to them, upon the $195,000 due banks, and upon the $154,600 invested in the capital stock. This was not the ordinary case of mere forgiveness of indebtedness. It was not a gift. It was the performance of an act which highly experienced and skillful business men honestly believed to be to their own best interests in the avoidance of loss and therefore to the interest of the government in maintaining income. But it nevertheless was an event which definitely and permanently prevented the collection of the debt. Compare the very closely analogous situation disclosed in Jones v. Commissioner, 38 F.(2d) 550 (C. C. A. 7).

Concluding, as we do, that the fact of the taxpayers' acceleration of the event of loss was not for tax evasion purposes, nor unreasonable, but rather in the due prosecution of their business, but that no loss may be claimed by reason of depreciation only in the value of the stock, the decision of the Board of Tax Appeals denying deduction to the amount of the investment in capital stock is affirmed; and the decision denying such deductions, in the aggregate of $293,970 for debts ascertained to be worthless and charged off during the taxable year is reversed, and the cause is remanded, with instructions to allow to each petitioner his proved portion of this aggregate.

MOORMAN, Circuit Judge (dissenting).

In December of 1921 petitioners were holders of "overdue notes" of the Smith Gas Engineering Company aggregating $293,970. They held also "additional" notes of the company in the sum of $99,030, were indorsers on its notes in bank aggregating $195,000, and two of them, Colonel Deeds and Kettering, were holders of its capital stock for which they had paid $154,600. At that time the books of the company showed assets in excess of liabilities, exclusive of capital stock. In this state of the company's affairs, petitioners surrendered and canceled the "overdue notes," and in their income tax returns for the year 1921 claimed deductions therefor "as debts ascertained to be worthless." The Commissioner and Board of Tax Appeals disallowed the claim. The majority opinion allows it upon the theory that, as the engineering company was "insolvent in the commercial sense" that it did not have and could not borrow the money to pay its overdue notes, was indebted to petitioners on other notes in the sum of $99,030, and to the bank on notes which the petitioners were indorsers in the sum of $195,000, it was a "reasonable conclusion" that "losses were inevitable" and had "been sustained," was to the "best interest" of the petitioners, in avoiding further losses on the bank indebtedness and the "additional" notes, to cancel the overdue debts, and that having been done, the debts became "worthless" and were deductible from income. I cannot agree that this is the correct basis for the deductibility of a debt.

The statute provides for the deduction of debts "ascertained to be worthless." It does not say who is to make the ascertainment, but for practical reasons it ought to be, it would seem, in the first instance, the taxpayer. I assume that it is, but, however that be, it is obviously true that the determination is one of fact, and, unless the fact exists, it cannot be ascertained. So the ultimate question in every such case is and must be, it seems to me, not what the taxpayer thought was to his interest nor what he honestly believed after investigation, but, Was the debt worthless? I admit, of course, that liquidation of the debtor is not in every case a prerequisite to the ascertainment, but even so the fact must exist before it can be ascertained. It is not enough, in my opinion, that the taxpayer believed it to exist or that there was "commercial insolvency" in the sense the majority opinion finds in this case. In the White Dental Company Case, 274 U. S. 398, 47 S. Ct. 598, 600, 71 L. Ed. 1120, the identifiable circumstance was the sequestration of the property of the debtor by an enemy country which left the corporation "without property or assets of any kind." In the present case no such occurrence happened; the company had assets in excess of its debts; it continued business until 1927; and the petitioners continued to advance money to it and guarantee its loans. It was not even shown in this case that the company could not pay. What was

shown was that it could not do so without selling some of its assets. Thus, although it did not have and could not borrow the money to pay, it nevertheless had assets subject to its debts, and, if forced into liquidation, could have paid a substantial part if not all of the debts here in question.

It is said in the opinion, however, that, after the cancellation of the notes, there "could be no doubt of the uncollectibility and resulting worthlessness" of the debts. If it is meant by this, as indeed there can be no doubt, that, although the debts were valuable immediately before they were canceled, upon their cancellation they became uncollectible in an action at law or in equity, and hence on December 31, ten days later, were "worthless" within the meaning of the statutes, I certainly cannot agree. This point of view which the opinion advances does not seem to have occurred to counsel for petitioners. I think it is utterly unsound. In the first place, I should doubt that the surrendering of the notes had the effect of extinguishing the liability—certainly it could not to the prejudice of petitioners' creditors. I do not, however, think it necessary to consider the effect of such action as between debtor and creditor, for in my opinion a creditor cannot voluntarily surrender a debt having value, even if the effect be to make it uncollectible, and then claim that it is "worthless" and deductible from income. Surely he ought not to be permitted to do so if he surrendered it, not because it was worthless, but to put the debtor company in a better financial condition to continue business, expecting that his stock holdings therein would become more valuable. The test, in my opinion, as I have said, is, Was the debt for which the deduction is claimed worthless? In this case the petitioners limited their claims for losses on debts to those represented by the overdue notes. The sole question therefore was, Were those debts, the ones for which the deduction is claimed, worthless? I think the Commissioner rightly decided that they were not.

Whether a part of the overdue debts should have been charged off as nonrecoverable is a question that the majority of the court, in view of its decision on the main question, did not find it necessary to decide. As I differ from the opinion on the point decided, I feel I should say that, in my view, a court would not be justified in overruling the Commissioner's action in disallowing a charge off in part. There is abundant evidence in the record to show that petitioners expected, by surrendering the notes, to put the company in position where it would ultimately become successful. If it had, they would have been the chief beneficiaries, for they owned all of the company's preferred and a large part of its common stock. The company was a going concern. It continued business for six years, and during that time the petitioners evidenced their faith in it by making advances to it and guaranteeing its loans in bank. We have construed the statute as giving the Commissioner a wider discretion in dealing with debts "recoverable only in part" than is given him with reference to deductions of debts ascertained to be worthless in their entirety. Stranahan v. Commissioner (C. C. A.) 42 F.(2d) 729. I do not think his action on that aspect of this case was arbitrary or unreasonable.

I have not observed from the arguments in the case that there has been an abandonment of the claim for a deduction on account of the stock, and, although I do not think petitioners were entitled to such deduction, I have difficulty in seeing why they were not if they were entitled to a deduction of the overdue notes. A deduction of the notes would have to be based, in my view of the law, upon the fact of worthlessness. If they were worthless, and they could be worthless only if the company had no assets to pay and was foredoomed to failure, it would seem inevitable that the stock was worthless too, for liability for debts takes precedence over distribution to stock. It was not necessary that the affairs of the company be wound up in order that a loss be sustained on the stock [White Dental Company Case, supra, and De Loss v. Commissioner (C. C. A.) 28 F. (2d) 803], and, unless the test is insolvency in a "commercial sense," an hypothesis that I cannot accept, there is, in my opinion, no ground to distinguish the deduction claimed on account of stock from that claimed because of the debts.