## HANCOCK v. COMMISSIONER OF INTERNAL REVENUE.
### No. 323.

Circuit Court of Appeals, Second Circuit.
June 26, 1939.

Hancock, Dorr, Ryan & Shove, of Syracuse, N. Y. (Benjamin E. Shove, of Syracuse, N. Y., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The deficiency in the taxpayer's income tax results from the disallowance of two deductions, one claimed as a loss sustained on corporate stock which became worthless in 1933, the other claimed as a bad debt that was charged off on the taxpayer's books in that year. The question presented is whether there is substantial evidence to support the Board's finding that neither stock nor debt became worthless during the taxable year. No testimony was introduced except that of the taxpayer and the facts are not in dispute.

Prior to the year 1933 the taxpayer had purchased 67 shares, one-third of the stock, of a corporation known as Syrdelco, Inc., for $6,456.88 and had loaned the corporation the sum of $100. In November, 1933, he became convinced that both investments were worthless and wrote them off as a total loss. The corporation had been organized in 1926 to acquire a lease upon land in the city of Syracuse, construct buildings thereon and sublet them. One building erected at a cost of approximately $15,000 contained three stores; a second building consisting of a show room and garage cost $50,000, of which $45,000 was borrowed upon the credit of the corporation and its three stockholders and was secured by a mortgage upon the leasehold. The yearly rental payable by Syrdelco, Inc., was to commence at $5,100 and was to increase at five year periods up to $6,600 per year, plus taxes and insurance upon the buildings, which were to belong to the lessor upon termination of the lease. The lease was for a term of 20 years with an option to purchase the premises for $150,000 or to renew for another 20 years at an annual net rental of $7,500. The larger building was erected for occupancy by Syracuse Stutz Company under a lease calling for $9,000 rent the first year and more in later years. This tenant went into possession on March 1, 1930, but became bankrupt in September of that year. During 1931 and 1932 the building remained vacant, but in 1933 the showroom was rented for $175 a month and from time to time during the year the garage was rented for $100 a month. The other building produced $90 a month during 1933. Thus the total subrents collectible by the corporation were only $365 per month, while the monthly rental payable by it was $425, plus taxes and insurance. The record shows that the corporation lost nearly $3,700 in 1930; $6,412 in 1931; and $9,976 in 1932. In 1932 it commenced to default in the payment of mortgage interest and city taxes. No interest was paid during 1933 and early in that year defaults began on its monthly rental payments. Efforts were made to obtain from the lessor a reduction in the stipulated rent, but no reduction would be granted except upon condition that the corporation pay up past due taxes amounting to $4,892.43. This it was unable to do. Finally an oral arrangement was reached that the lessor would pay the overdue taxes, take over collection of the subrents and apply them toward her own reimbursement.

After paying operating expenses her agent was able to turn over to her only about $550 per year. During 1933 the corporation also negotiated unsuccessfully with the mortgagee for a reduction of the six per cent. interest rate. In November it was informed that the mortgagee's attorneys had been instructed to start foreclosure proceedings. Due to the accumulation of similar business in their office they did not actually begin the action until March 1, 1934. At the foreclosure sale later in that year the leasehold brought only $450. It was after talking with the mortgagee's attorneys in November that the taxpayer came to the conclusion that his stock in Syrdelco, Inc., was worthless. He was the owner of several pieces of real estate in the city of Syracuse and during 1933 there was scarcely a tenant of his whose rent he did not cut at least in half. He abandoned all his mortgaged real estate where he was not personally liable on the bond. His clients—he was a lawyer—were doing similarly. It may be inferred that the corporation itself realized the hopelessness of its situation since it ceased paying its annual franchise tax in 1933 and no directors or stockholders' meetings were held in that year.

■ In our opinion the foregoing recital shows beyond peradventure of doubt that the stock of Syrdelco, Inc., was worthless in 1933. The corporation's sole asset was a leasehold. For the three preceding years it had sustained increasing losses and in 1933 it ceased to derive any income whatever since the lessor began the collection of subrents for her own account. At her will she could forfeit the lease for defaults and defaults were ever mounting. The lessee's mortgage was also in default and the mortgagee had given instructions to foreclose it; and the corporation itself faced dissolution in the not distant future for failure to pay its franchise taxes. The times were desperate for real estate owners in the city of Syracuse as well as elsewhere. That the bare legal title still retained by the lessee had any greater value at the close of 1933 than it had a few months later when sold at the foreclosure auction is quite incredible. While it is true, as the Treasury Regulations have declared for many years, that "losses must usually be evidenced by closed and completed transactions," this does not preclude the taking of a loss in the year when the investment actually becomes worthless, even

though the taxpayer has not parted with his title. See De Loss v. Commissioner, 2 Cir., 28 F.2d 803; Rhodes v. Commissioner, 6 Cir., 100 F.2d 966. Moreover, the events already discussed which happened in 1933 were sufficient to identify the loss as occurring in that year. In our opinion the Board was in error in determining that the petitioner's stock and note were not definitely shown to have become worthless until the 1934 foreclosure sale.

Order reversed.