**HELVERING, Commissioner of Internal Revenue, v. GORDON.**
No. 5037.

Circuit Court of Appeals, Fourth Circuit.
April 2, 1943.

Maryhelen Wigle, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Watson Washburn, of New York City (Royal E. Mygatt, of New York City, on the brief) for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This petition for review challenges a determination of the Board of Tax Appeals that Alice V. Gordon sustained a deductible loss in 1937 with respect to her interest in certain real estate in Pittsburgh, Pennsylvania, that became worthless in that year although her title thereto was not divested until 1940. Under § 23 (e) of the Revenue Act of 1936, Ch. 690, 49 Stat. 1648, 26 U.S.C.A.Int.Rev.Code § 23(e), deductions are allowed in computing net income for losses of individuals if incurred in any transaction entered into for profit though not connected with trade or business. The gist of the Commissioner's contention is that under this statute and the accompanying regulations, a deduction for loss on real property is not permissible unless there has been a complete elimination of value and also an abandonment by the taxpayer of all interest in the property during the taxable year. It is asserted that neither complete loss of value nor abandonment during the taxable year was established in this case.

The Board found specifically that the taxpayer's interest in the property became worthless in 1937 and this finding was supported by substantial evidence as the following summary of the undisputed facts will disclose. The property was located in the downtown district of Pittsburgh and was improved by an eight story brick building erected in 1895 and used as an office building. The taxpayer had an undivided one-fifth interest in the property and also a one-fourth remaining interest in another undivided one-fifth interest. The property was managed by the Peoples-Pittsburgh Trust Company for the taxpayer and her co-owners.

During the years 1933 to 1937 the property was operated at a net loss of $11,485.85, without making any allowance for depreciation, and of this deficit the taxpayer's share was $2,297.15. Her account with the Trust Company, representing her share of the net profit or loss, disclosed an overdraft of $2,118.05 on January 1, 1937, and $1,756.39 on December 4, 1937. During this period of years one-half of the rental space in the building was vacant, and delinquent and unpaid taxes with penalties and interest had accumulated which at the end of 1936 amounted to $30,171.85 and at the end of 1937 to $38,730.99.

From 1936 to 1938, except for occasional visits to the United States, the taxpayer was absent in the Netherlands or in Haiti, and her business interests were entrusted to a New York attorney. Acting upon her instructions he attempted in 1936 and the early part of 1937, without success, to sell her undivided interest in the property to her co-owners. He caused a careful examination of the property to be made which resulted in a most discouraging report and in the recommendation early in 1937 that the taxpayer sell her interest for anything she could get and failing a purchaser, that she insist that the building be razed and the land sold. The business manager of the building was of the opinion that some of the co-owners might be willing to pay $5,000 for her interest and the taxpayer authorized her attorney to accept any bid as low as $3,500 subject, however, to the payment of the taxpayer's share of the delinquent taxes and her overdraft with the

Trust Company amounting in the aggregate to approximately $7,600.

Efforts to persuade the co-owners of the property to buy the taxpayer's interest proved fruitless. On July 1, 1937 the Trust Company notified the taxpayer that it would no longer carry the overdraft and that major repairs were needed, and that if she was not willing to join in the operation of the building, it was necessary for her to institute partition proceedings. On August 3, 1937 a suit for partition and sale of the property was brought on her behalf. She took this step although at the time she was financially able to pay her share of the necessary expenses. On September 7, 1937 the Trust Company notified the taxpayer that new boilers were necessary and also that two new elevators costing $25,000 were required and that the labor unions were demanding double the current wages for service employees. The taxpayer refused to consent to any improvements and expressed the desire that the building be closed and the tenants notified. This step was taken on September 21, 1937 with the consent of all the owners of the property and the tenants were notified to quit on September 30, 1937. By December 1, 1937 the building was vacated except for one stock room on the first floor which remained occupied till April 30, 1939 to minimize insurance rates.

In the month of December, 1937 the co-owners refused to make any offer whatsoever for the taxpayer's interest. In the same month testimony was taken in the partition suit which showed that the actual value of the land and buildings was less than the amount of the delinquent taxes, penalties and interest assessed against the property, and the attorney therefore advised the taxpayer by letter of December 28, 1937, which reached her in the Netherlands on January 13, 1938, that her interest had no value. The same conclusion was formally set out in the return of the sheriff's inquest in the partition proceeding which was filed in court on January 4, 1938. Accordingly, no steps were taken in the partition proceeding subsequent to that date.

No effort was made by the taxing authorities to dispose of the property until August and September of 1940 when proceedings for that purpose were instituted. A public sale was held in September, 1940 and as there were no bidders other than the taxing bodies, the title to the property was transferred to them in proportion to their respective claims.

During the hearing before the Board of Tax Appeals the appraisal of an experienced dealer in real estate office buildings in Pittsburgh was introduced in evidence to the effect that the fair market value of the property at the end of 1937 was $22,000 and that as the tax liens exceeded the sum of $38,000, the property stood liable to the extent of $16,000. The Board accepted this appraisal as correct and on all the facts before it found that the petitioner's interest in the property in question became worthless in 1937. The Commissioner disputes this finding because the local tax assessments required by law to be based on market value, indicated a value in that year in excess of $175,000, and because the manager of the building believed that if provided with necessary funds he could put the building on a paying basis, and because the taxpayer endeavored to sell her interest at a substantial figure and finally filed the proceeding to partition and sell the property in 1937. These considerations do not seem to be possessed with great probative force under the circumstances, but if it were otherwise, we should be obliged to disregard them in view of the conclusive effect of the Board's findings based on what must be conceded to be substantial evidence of undoubted weight. Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346.

We come then to the main contention of the Commissioner that even if the property became worthless in 1937, the taxpayer was not entitled to the deduction because she retained title to the property and did not abandon it in the taxable year. The contention seems to be that without a divestiture of title, voluntary or involuntary, a complete loss of an interest in land cannot occur, but only an unliquidated shrinkage of value which furnishes no basis for a loss deduction. Until title is transferred, it is said, the possibility of some salvage persists and the transaction cannot be regarded as completed and closed. It is admitted that in the case of personal property, such as securities, actual worthlessness is the test irrespective of retention of title since practical rather than technical considerations should prevail. Thus in Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010, where the taxpayer sought to deduct

a loss caused by breach of contract before it was realized, the court said:

"Generally speaking, the income tax law is concerned only with realized losses, as with realized gains. Weiss v. Wiener, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720. Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test."

See, also, United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 401, 47 S. Ct. 598, 71 L.Ed. 1120; De Loss v. Commissioner, 2 Cir., 28 F.2d 803; Lambert v. Commissioner, 10 Cir., 108 F.2d 624, 625.

But, we are told that "real estate always has potential value and so long as a taxpayer retains title to such property he is in a position to profit from future favorable developments." Assuming the truth of this assertion with respect to an unencumbered interest in land, it cannot stand the practical or realistic test which is met when the interest is subject to superior liens or encumbrances that exceed its real value. In such a case the value of the equity is extinguished as effectually as the interest which a stockholder retains who holds title to shares in an insolvent corporation that has no reasonable expectation of recovery. In one case, as in the other, the loss has taken place and the retention of the bare legal title becomes a circumstance without significance that should not prevent the taxpayer from taking the deduction in the year in which the loss occurs or permit him to postpone it at will to some later year when it will produce a larger reduction of tax liability.

The weight of authority is in accord with this view. It was given effect in Denman v. Brumback, 6 Cir., 58 F.2d 128, where the levy of a special tax assessment made the land worthless; and also in Rhodes v. Commissioner, 6 Cir., 100 F.2d 966; and Bickerstaff v. Commissioner, 5 Cir., 128 F.2d 366, involving interests in Florida lands, encumbered with tax or mortgage liens, which had become worthless by reason of

disastrous hurricanes and the collapse of the Florida boom. See, also, Commissioner v. Hoffman, 2 Cir., 117 F.2d 987; Commissioner v. Peterman, 9 Cir., 118 F.2d 973. In Denman v. Brumback, supra, 58 F.2d at page 129, the court said:

"Undoubtedly a sale of property is an identifiable event, more conclusive, perhaps, than anything else could be. This is not to say, however, that in the case of real estate it is the only possible identifiable event which can fix and determine a loss. Under the uncontradicted evidence in this case, the property became valueless as soon as the court order was entered fixing the assessment. The taxpayer, applying an eminently practical test, and exercising a reasonable business judgment, concluded that his investment was wholly lost, abandoned the land, and wrote it off as worthless. The history of the lands in the Bitter Root Valley as disclosed by the evidence confirms his judgment. About this there can be no doubt. From every practical viewpoint the order of the Montana court determined the matter. The land was thereafter worthless. We see no distinction in law between a loss suffered on real estate from one suffered on personal property if and when value becomes 'finally extinct'. Royal Packing Co. v. Com'r [9 Cir.], 22 F.2d 536; De Loss v. Com'r [2 Cir.], 28 F. 2d 803; Deeds v. Com'r [6 Cir.], 47 F.2d 695."

The lack of vital distinction between losses in real estate and in corporate securities is illustrated by the allowance of a loss deduction to a stockholder in a corporation holding only real estate, in Hancock v. Commissioner, 2 Cir., 105 F.2d 153, cited with approval in the Commissioner's brief in the pending case. Moreover, it should be noted that Treasury Regulations 94, promulgated under the Revenue Act of 1936, Article 23 (e)-3, recognized that the exception to the rule requiring a sale or other disposition of property in order to establish a loss applies to buildings when they are permanently abandoned or devoted to a radically different use.

■ The decisions upon which the Commissioner relies do not justify the disallowance of the deduction in the pending case. In Greenleaf Textile Corp. v. Commissioner, 26 B.T.A. 737, affirmed 2 Cir., 65 F.2d 1017, Commissioner v. Abramson, 2 Cir., 124 F.2d 416, and Commissioner v. McCarthy, 7 Cir., 129 F.2d 84, the court

found that the taxpayer had failed to prove the worthlessness of his property or any definite act of abandonment in the tax year so that a retention of title by the taxpayer assumed real importance. In Helvering v. Jones, 8 Cir., 120 F.2d 828, Commissioner v. Green, 3 Cir., 126 F.2d 70, and Blum v. Commissioner, 2 Cir., 133 F.2d 447, the essential question was whether the loss from an investment in real estate was an ordinary loss giving rise to a full deduction or a capital loss giving rise to a partial reduction only, and the solution depended to some extent upon the time when the loss was realized. In some of these cases the importance of some definite act of abandonment to prove a completed loss was emphasized; but in our view the question is one of proof and without minimizing the value of abandonment as evidence of worthlessness, we hold that divestiture of legal title is not essential if worthlessness is otherwise satisfactorily established. That was done, as the Board found, and substantial evidence in support of its finding is seen in the abandonment of the building for purposes of occupancy in the tax year, and the uncontradicted proof given in the partition case in 1937 that the property was then worth less than the tax liens upon it. No weight should be given to the fact that the formal return of the sheriff's inquest was not made to the court until a few days later in January 1938, for it cannot be denied that the value of the taxpayer's interest was totally extinct in 1937.

Affirmed.