**BULLARD et al. v. UNITED STATES.**

**No. 126.**

Circuit Court of Appeals, Second Circuit.

Dec. 22, 1944.

Ralph Royall and Ehrich, Royall, Wheeler & Holland, all of New York City, for appellants.

John B. Creegan and John F. X. McGohey, U. S. Atty., both of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is an action to recover income taxes, erroneously collected for the year 1940; the question is whether the plaintiffs, as executors, were denied a proper deduction. The stipulated facts were in substance as follows. The plaintiffs' testator, Percy Bullard, in 1929 bought 1250 shares of stock in a corporation, which owned and managed an apartment house in New York; and at the same time he signed a lease with the corporation for an apartment in the premises. The building was divided into two parts or sections, with separate entrances: one section was reserved for those lessees who were also shareholders; the other, for lessees who had no other proprietary interest in the premises. The venture proved unsuccessful, and on February 27, 1940, the directors passed a resolution ending all the leases as of September 30th of that year. Some of the shareholders—Bullard among them—took new leases, and the apartments in both sections were thrown open equally to desirable tenants without regard to whether they were shareholders. The premises were subject to a first mortgage of $3,000,000, and to a second mortgage of $200,000; interest upon which had been paid in full, as well as all taxes; the total liabilities were about $3,300,000. The annual expenses were some $318,000; and the estimated gross income from rents for the year commencing October 1, 1940, was $274,000; leaving a deficit in the neighborhood of $44,000. In 1939–40, the premises were assessed for $3,600,000, and in the next year, for $3,500,000; and on September 30, 1940, the corporation had a net cash worth according to its books of somewhat less than $60,000. One of the shareholders, who owned 3250 shares, sold them at public auction on November 20, 1940, for $105.

The plaintiffs asserted that the shares had become worthless in 1940, and wished to deduct a part of the purchase price under § 23(e) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(e) (2), as a loss incurred in a transaction entered into for profit. They conceded that, so far as the price represented an investment in the leased apartment, it was not within this section; but, since it had been stipulated that, to the extent of thirty per cent, the price was properly allocable to the other section of the building, they claimed the privilege of deducting that proportion of their loss from their income. This they said was in accordance with the practice of the Treasury as to "multiple dwelling" houses, when a taxpayer lets one part for profit and occupies another. The court found that no part of the purchase price had been invested in a transaction entered into for profit, that the shares did not become worthless during 1940, and he directed judgment dismissing the complaint. From this judgment the plaintiffs appealed.

Apartments of this kind have been common in New York for many years; it is the practice to reserve a part of the building for renting to outsiders in the hope that the rents will keep down, or extinguish, the rents reserved upon the leases taken by the shareholders for their own occupation. It is possible to look at such arrangements in two ways, and perhaps the solution may depend upon what the actual purpose of the shareholders is in a given case. On the one hand, the rents derived from the outsiders' apartments may be considered as no more than a set-off against the rents due under the shareholders' leases, and these as reserved only to pay their share of the running expenses. If that is the plan, it would be difficult to say that the rents from the outsiders were derived from a separate transaction entered into for profit. On the other hand, it may be possible to separate the arrangement into two parts and to treat the outsiders' rents as a separate source of income. We shall not pass upon that question; we shall assume for argument that the plaintiffs are right, and this we may do

because we are clear that nothing happened in 1940 to require the Commissioner to treat the shares as definitively ascertained to be worthless. It is true that the original arrangement changed when the shareholders' leases were cancelled, but that did not destroy the shares; conceivably it might increase their value, as no doubt was the hope. The corporation did not go out of business, on the contrary it tried to go on, opening all the apartments to the highest bidder. We may assume from the sale of the 3250 shares that all the shares were at that time worthless in the sense that they had no saleable value; but that is by no means enough. The premises might recover some of their value; in the ensuing four years many buildings have done so; the outlook has much improved; obviously the corporation was not yet prepared to throw in the sponge. No liquidation was proposed; no declaration of insolvency made; no receiver appointed; no such "identifiable event" occurred as was necessary to establish the worthlessness of the property. The situation falls more nearly within Olds & Whipple v. Commissioner of Internal Revenue, 2 Cir., 75 F.2d 272, and Hull's Estate v. Commissioner of Internal Revenue, 2 Cir., 124 F.2d 503. It is not within Kirby v. Commissioner of Internal Revenue, 5 Cir., 102 F.2d 115, where the shareholders abandoned the corporation, left it to its fate, realizing that the property must be taken over by the creditors, and that nothing would be left for them. Nor is it like Hancock v. Commissioner of Internal Revenue, 2 Cir., 105 F.2d 153, where the corporation was only a lessee, where a mortgagee of lease had already given orders to foreclose, where the taxpayer had abandoned all his other mortgaged real estate in the city, and where the corporation had defaulted even on its franchise tax. Helvering v. Gordon, 4 Cir., 134 F.2d 685 merely upheld a finding of the Board of Tax Appeals that the property had become worthless in the year in question; the court did not pass upon the issue as a new one. It would be unsafe to say that until a corporate business has been abandoned, there cannot be that "identifiable event" which is necessary in such situations; but at least we can say that, when the business does continue, the circumstances must be exceptional which will induce us to hold that the shares have as yet become worthless.

Judgment affirmed.