## SNOW et al. v. MARCELLE.
### Civ. No. 8821.

United States District Court
E. D. New York.
March 9, 1950.

Charles Korn, New York City (Jacob Rabkin, New York City, of counsel), for plaintiffs.

J. Vincent Keogh, United States Attorney, Brooklyn, N. Y., Frank J. Parker, Asst. U. S. Atty., Brooklyn, N. Y., Theron Lamar Caudle, Asst. Atty. Gen. (Andrew D. Sharpe and Frederick G. Rita, of counsel, Sp. Assts. to Atty. Gen.), for defendant.

KENNEDY, District Judge.

Plaintiffs sue for a refund in the amount of $14,372.51, which sum was assessed against them as additional taxes for the tax year 1941, as a result of the Commissioner's disallowance of a capital loss claimed to arise from the worthlessness of stock of City Mortgage Company (City). The loss was disallowed on the ground that the stock had become worthless prior to 1941. The relevant tax statute is Internal Revenue Code, Sec. 23(g) (2), 26 U.S.C.A. § 23(g) (2). Plaintiffs' rights are also ruled by Regulations 103, article 23(e)-4 issued by the Bureau of Internal Revenue for the year 1941.

The facts have been very largely stipulated and I shall merely supply a summary of those which I consider most pertinent.

Prior to May 1, 1936 City was engaged in the business of making building loans on New York real estate. It had an arrangement with The New York Trust Company (Trust Company) under which bonds and mortgages owned by City were assigned as collateral security to the Trust Company for loans. The practice was for City to make a commitment to a builder, and after execution of the temporary building loan, to assign to the Trust Company all of the mortgage papers, title, policies and other evidences of title. The Trust Company was never obliged to lend more than 60% of the appraised value of the property, and if the loan exceeded that amount City supplied its own funds for the excess.

I need not stop to describe the conditions obtaining in the real estate market in New York City during the years 1933 to 1936. As a result of those conditions, so well-known, City was forced, on May 1, 1936, to enter into an agreement with the Trust Company under which City reduced its obligations in the amount of $47,137.86,

pledged additional collateral to the Trust Company, made a substantial payment on account of interest arrears, and then was given the right for a period of five years to continue its business and to regain its equity in the pledged securities if it could.

Between May 1, 1936 and March 31, 1941 City made considerable progress. It reduced its indebtedness to the Trust Company in the amount of $1,140,821.48. Its operating income continued to improve; for example, its net income for the year 1940 was $45,253.25. Specifically it rehabilitated one piece of property on 72nd Street and the East River in such wise that in the year 1938 it converted an operating deficit in the amount of $10,000 into a gross income of $55,000. The funds for rehabilitation were obtained from the Trust Company in the form of an additional loan which by March 31, 1941 had been reduced from $130,000 to $14,570.77. In 1937, as a result of a major alteration on an office building in New Rochelle, City increased the rentable income of this property from $40,000 to $60,000 per year.

During the period May 1, 1936 to March 31, 1941 City met all of its obligations to the Trust Company for the payment of interest and principal. It paid its real estate taxes, franchise taxes and capital stock taxes, and it discharged all of its obligations for salaries, rents and other operating expenses.

As the five-year period allowed City by the Trust Company neared its expiration, the former endeavored to obtain an additional five-year extension of the working agreement with the Trust Company. The record suggests that such an extension had been informally promised. One of the plaintiffs (George Snow) to obtain the extension, offered to put in $50,000 additional in cash in reduction of City's indebtedness to the Trust Company. When the informal promise was broken, Snow demanded and secured an interview with the Board of Directors of the Trust Company. But his efforts to secure an extension were unavailing, and on March 31, 1941 City turned over to the Trust Company all of its right, title and interest in the pledged collateral. On October 23, 1941 City was dissolved; and it was in that tax year that the plaintiffs, as owners of the stock of City, claimed that they had sustained a loss resulting from the fact that the stock of City had become worthless. It was this loss which was disallowed by the Commissioner, and his action gives rise to the suit.

The question upon the resolution of which the determination of the case must be made, is, of course, whether plaintiffs have sustained their burden of showing that in the tax year 1941 there occurred some "identifiable events" [1] which made the stock worthless. The defendant is under no obligation to show exactly when any such identifiable events occurred. But here, in meeting plaintiffs' proof, defendant suggests that the stock became worthless, not in 1941 but in 1936. It urges that in that year City, in effect, went out of business and became a mere liquidation agent for the Trust Company. And defendant points to the fact that in 1937 plaintiff George Snow swore in connection with an estate tax return on his mother's estate that the City stock had no value.[2] Again, in connection with his 1939 income tax return plaintiff George Snow, claiming a loss resulting from the dissolution of

---

1. This expression seems to have been first used in an opinion by Mr. Justice Stone. U. S. v. S. S. White Dental Mfg. Co., 1927, 274 U.S. 398, 47 S.Ct. 598, 600, 71 L.Ed. 1120. At that time treasury regulations (Article 141, 45) provided that losses to be deductible "must usually be evidenced by closed and completed transactions". Construing these words, Mr. Justice Stone said that they contemplated deduction of losses "which are fixed by identifiable events".

2. The government considers Snow's statement in admission that the stock was *worthless*, and in its brief it italicizes this word. The stipulation of facts shows, however, *that while the estate tax return does contain a caption "Worthless Securities", Snow put down the value* as "zero". It is surely manifest that the use of the phrase "worthless securities" in an estate tax return does not have the same connotation as the expression has now acquired in the course of judicial decision concerning tax losses.

one of City's affiliates (Realty Operating Corporation), asserted that two notes of City, having a face value respectively of $140,248.61 and $121,400 were actually worth only $21,500 and $11,500 respectively.

The parties agree that the law ruling the case is to be found in Bullard v. United States, 2 Cir., 1944, 146 F.2d 386. And probably the most pertinent passage in the opinion of Judge Learned Hand is this one, 146 F.2d at page 388: "It would be unsafe to say that until a corporate business has been abandoned, there cannot be that 'identifiable event' which is necessary in such situations; but at least we can say that, when the business does continue, the circumstances must be exceptional which will induce us to hold that the shares have as yet become worthless". It is said by the government here that the business of City actually did not continue after 1936. And at the trial I said that the agreement between City and the Trust Company of May 1, 1936 has the aspect of a liquidating agreement, under which City was acting as agent for the Trust Company. But this is only part of the effect of that agreement. The facts here establish clearly that plaintiff George Snow was at all times between May 1, 1936 and March 31, 1941 not only hopeful but confident that City could solve the difficulties into which it had been precipitated by the panic. I appreciate that I must not use the subjective test. But here, to use the language of Bullard, no liquidation was proposed, no declaration of insolvency made, nor any receiver appointed. There was nothing to show, again to quote from Bullard, that plaintiffs were "prepared to throw in the sponge"; the facts are exactly to the contrary. To mention again one highly significant event in 1941, plaintiff George Snow was prepared to furnish additional funds in the amount of $50,000 to the project if he could be given five years more to operate under the working agreement. And I am not in the slightest doubt that had the Trust Company given it the extension requested, Snow's company would have shown improvement at an accelerated rate.

The specific acts on the part of George Snow stressed by the defendant as evidence of the stock's worthlessness prior to 1941 remain to be dealt with. It is undeniable that in 1937 Snow believed the stock of City had no *value* and that in 1939 he took the position that the notes of the company were worth far less than their face value, the clear implication again being that the stock then, in his opinion, must have been without value. These matters might be shortly disposed of by the statement that if the subjective test should not be used where it helps the taxpayer, then it ought not be used when it hurts him, since it is a poor rule that won't work both ways. However, treating these acts as if they were admissions, they still do not establish that the stock was worthless. In fact, one of the cases which defendant cites, Morton v. Commissioner, 38 B. T.A. 1270, 1278–1279, affirmed 7 Cir., 1940, 112 F.2d 320, contains this interesting passage: "If the assets of the corporation exceed its liabilities, the stock has a liquidating value. If its assets are less than its liabilities but there is a reasonable hope and expectation that the assets will exceed the liabilities of the corporation in the future, its stock, while having no liquidating value, has a potential value and can not be said to be worthless".

I do not see how one can successfully controvert the proposition that here at all times between 1936 and 1941 the stock of City had potential value. I am quite sure that if plaintiffs had attempted to deduct a loss for any one of the years in question (1936–1941) they would have been met with the claim that no identifiable event had occurred during those years, and under the Bullard case the Commissioner would have been on perfectly sound ground if he had taken that position. The trial record will show that I myself was under some confusion concerning the difference between lack of value and worthlessness. Perhaps such confusion may be pardonable. But, however that may be, putting immediate value at any particular time aside, the history of the company between the years in question, and its operations during those years, are completely inconsistent with the notion that the stock was worthless tax-wise. Indeed, the record shows

that this same company had successfully weathered the panics of 1892, 1893, 1907 and 1921.

There is a stipulation of facts in this record and it seems to me that I need make no findings in such a case except the key finding that plaintiffs' stock was not worthless until the dissolution of the company in 1941, and the conclusions that they were entitled to take the deduction in that year, and that they are now entitled to a judgment of refund.